**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
Tampa Division**

DUSTY LEITZKE,
on behalf of herself and all others
similarly situated,

               Plaintiff,                Case No. 8:19-cv-02174-VMC-AEP

v.

JPMORGAN CHASE BANK, N.A.,

               Defendant.

_____/

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
FOR FLSA CONDITIONAL CERTIFICATION AND NOTICE**

Mark E. Zelek
MORGAN, LEWIS & BOCKIUS LLP
200 South Biscayne Boulevard, Suite 5300
Miami, FL  33131-2339
Tel:  +1.305.415.3303
eFax:  +1.877.432.9652
eMail:  mark.zelek@morganlewis.com

Sari M. Alamuddin (pro hac vice)
MORGAN, LEWIS & BOCKIUS LLP
77 W. Wacker Drive
Chicago, IL  60601
Tel:  +1.312.324.1000
Fax:  +1.312.324.1001
eMail:  sari.alamuddin@morganlewis.com

Sam S. Shaulson (pro hac vice)
MORGAN, LEWIS & BOCKIUS, LLP
101 Park Avenue
New York, NY 10178
Tel:  +1.212.309.6718
Fax:  +1.212.309.6001
eMail:  sam.shaulson@morganlewis.com

# <u>TABLE OF CONTENTS</u>

**Page(s)**

I.    INTRODUCTION ..................................................................................................... 1

II.    KEY FACTS ............................................................................................................ 3

    A.    Some Members Of The Proposed Collective Receive Overtime, And Some Do Not.................................................................................................................... 3

    B.    Some Members Of The Proposed Collective Determine If SARS Should Be Filed And Others Do Not ..................................................................................... 3

    C.    Some Members Of The Proposed Collective Have Production Goals And Others Do Not ..................................................................................................... 4

    D.    Members Of The Proposed Collective Who Issue SARS Differ In The Documents They Review, Types Of Fraud Determinations They Make, And Trainings They Receive ........................................................................................ 4

    E.    Some Members Of The Proposed Collective Claim To Rely Heavily On Guidelines And Job Aids, While Others Do Not ..................................................... 5

III.    ARGUMENT ........................................................................................................... 7

    A.    The Motion To Compel Arbitration Should Be Decided First And Moots The Motion for Conditional Certification ...................................................................... 7

    B.    Even If Plaintiff Were Not Barred From Litigating Her Claims In Court, She Has Failed To Meet The Standard For Conditional Certification........................... 7

        1.    Standard of Review..................................................................................... 7

        2.    Plaintiff Has Not Established A Sufficient Number Of Putative Collective Action Members Would Be Interested In Joining The Suit ...... 9

        3.    Plaintiff Has Not Met Her Burden to Demonstrate All FCOI Investigators, Senior Investigators, and Investigations Specialists Are Similarly Situated.................................................................................... 10

            i.    The proposed class is not similarly situated because they are not uniformly classified as exempt ............................................... 10

            ii.    Common exempt classification alone does not warrant certification ................................................................................... 11

            iii.    The Court need not make credibility determinations to conclude that the proposed collective is not similarly-situated in their job duties ................................................................................. 12

            iv.    Plaintiff cannot paper over differences in the putative collective with generalized observations ...................................... 16

            v.    Far from binding the collective, Plaintiff's job postings only underscore differences ......................................................... 17

          vi.    Written guidelines relating to job duties differ in content and importance depending on the Investigator ................................... 18

          vii.   Plaintiff cannot rely on legal assertions to establish job duties .... 19

C.    If A Class Is Certified It Should Be Limited In Scope ........................................ 20

    1.    Any class certified should be limited to Tampa, FL ............................... 20

    2.    Any class certified should not include those with BAAs ........................ 21

    3.    Any class certified should not include Investigations Specialists ............ 23

D.    Plaintiff's Proposed Notice Is Improper ................................................ 23

IV.   CONCLUSION ................................................................................................ 24

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Am. Family Mut. Ins. Co. Overtime Pay Litig.*,
No. 06-17430, 2009 WL 248677 (D. Colo. Feb. 3, 2009)......................................................23

*Beauperthuy v. 24 Hour Fitness USA, Inc.*,
No. 06-715, 2008 WL 793838 (N.D. Cal. Mar. 24, 2008) ....................................................13

*Beecher v. Steak N Shake Operations, Inc.*,
904 F. Supp. 2d 1289 (N.D. Ga. 2012) .................................................................................13

*Benitez v. Balans L.C.*,
No. 10-22811, 2010 WL 11602404 (S.D. Fla. Dec. 6, 2010)..............................................8, 9

*Bollinger v. Residential Capital*,
761 F. Supp. 2d 1114 (W.D. Wash. 2011)..............................................................................13

*Brooks v. A. Rainaldi Plumbing, Inc.*,
No. 06-0631, 2006 WL 3544737 (M.D. Fla. Dec. 8, 2006) ..................................................11

*Butler–Jones v. Sterling Casino Lines, LP*,
No. 08–1186, 2008 WL 5274384 (M.D. Fla. Dec. 18, 2008)................................................11

*Calderon v. GEICO Gen. Ins. Co.*,
809 F.3d 111 (4th Cir. 2015) ................................................................................................20

*Carruthers v. Keiser Sch., Inc.*,
No. 09-2641, 2010 WL 5055876 (M.D. Fla. Dec. 3, 2010) ..................................................11

*Chalker v. Burlington Coat Factory of Fla., LLC*,
No. 12-2755, 2013 WL 5954783 (M.D. Fla. Nov. 7, 2013).....................................................8

*Ciani v. Talk of the Town Rests., Inc.*,
No. 14-2197, 2015 WL 226013 (M.D. Fla. Jan. 16, 2015)...................................................14

*Cohen v. Allied Steel Bldgs., Inc.*,
554 F. Supp. 2d 1331 (S.D. Fla. 2008) .................................................................................24

*Collado v. J&G Transp., Inc.*,
No. 14-80467, 2015 WL 1478609 (S.D. Fla. Mar. 31, 2015)...............................................22

*Colozzi v. St. Joseph's Hosp. Health Ctr.*,
595 F. Supp. 2d 200 (N.D.N.Y. 2009) ..................................................................................24

*Compere v. Nusret Miami, LLC*,
   396 F. Supp. 3d 1194 (S.D. Fla. 2019) .............................................................7, 22

*Czopek v. TBC Retail Grp., Inc.*,
   No. 14-675, 2015 WL 4716230 (M.D. of Fla. Aug. 7, 2015).................................23

*Davida v. Newpark Drilling Fluids, LLC*,
   14-0552, 2015 WL 13652730 (W.D. Tex. Jan. 6, 2015) ......................................24

*Dean v. W. Aviation, LLC*,
   No. 17-62282, 2018 WL 1083497 (S.D. Fla. Feb. 28, 2018) ................................24

*Dearth v. Hartford Fire Ins. Co.*,
   16-1603, 2018 WL 4537474 (M.D. Fla. Sept. 4, 2018), *R&R adopted sub
   nom. Bachmann v. Hartford Fire Ins. Co.*, No. 16-1603, 2018 WL 4502976
   (M.D. Fla. Sept. 20, 2018) ...................................................................................22

*Deluca v. Farmers Ins. Exch.*,
   386 F. Supp. 3d 1235, 1252-53 (N.D. Cal. 2019)..................................................20

*Demauro v. Limo, Inc.*,
   No. 10-413, 2011 WL 9191 (M.D. Fla. Jan. 3, 2011)..................................8, 11, 14

*Dimery v. Universal Prot. Serv., LP*,
   No. 15-2064, 2016 WL 7666136 (M.D. Fla. Mar. 24, 2016) .......................9, 12, 16

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018)...........................................................................................22

*Espenscheid v. DirectSat USA, LLC*,
   705 F.3d 770 (7th Cir. 2013) ...................................................................................8

*Fiore v. Goodyear Tire & Rubber Co.*,
   No. 09-843, 2011 WL 867043 (M.D. Fla. Mar. 10, 2011) .....................................14

*Fraticelli v. MSG Holdings, LP*,
   No. 13-6518, 2014 WL 1807105 (S.D.N.Y. May 7, 2014) ..............................15, 16

*Fulwood-Kelley v. Cordis Corp.*,
   No. 09-20920, 2009 WL 5171752 (S.D. Fla. Dec. 22, 2009)................................20

*Gibbs v. MLK Express Servs., LLC*,
   No. 18-434, 2019 WL 2635746 (M.D. Fla. June 27, 2019)...................................21

*Glatt v. Fox Searchlight Pictures, Inc.*,
   811 F.3d 528 (2d Cir. 2016)....................................................................................8

*Goodrich v. Covelli Family Ltd. P'ship*,
    No. 11-1715, 2012 WL 1081473 (M.D. Fla. Mar. 30, 2012) ............................................9, 10

*Gordon v. Kaleida Health*,
    No. 08-378, 2009 WL 3334784 (W.D.N.Y. Oct. 14, 2009) ....................................................23

*Green v. Grand Villa of St. Petersburg*,
    No. 15-1973, 2015 WL 7777537 (M.D. Fla. Dec. 3, 2015) ....................................................14

*Gross v. Pelican Point Seafood of Tarpon Springs, LLC*,
    No. 17-1208, 2017 WL 3316632 (M.D. Fla. Aug. 3, 2017) ....................................................12

*Hart v. JPMorgan Chase Bank, NA*,
    No. 12-470, 2012 WL 6196035 (M.D. Fla. Dec. 12, 2012) .........................................9, 11, 12

*Haynes v. Singer Co.*,
    696 F.2d 884 (11th Cir. 1983) .................................................................................................9

*Herrera v. Mattress Firm, Inc.*,
    No. 17-22048, 2017 WL 4270619 (S.D. Fla. Sept. 26, 2017) ...........................................11, 14

*Hipp v. Liberty Nat'l Life Ins. Co.*,
    252 F.3d 1208 (11th Cir. 2001) .............................................................................................12

*Hoffmann-La Roche Inc. v. Sperling*,
    493 U.S. 165 (1989)...........................................................................................................8, 21

*Holmes v. Quest Diagnostics, Inc.*,
    No. 11-80567, 2012 WL 12876965 (S.D. Fla. June 14, 2012)..............................................12

*Holt v. Rite Aid Corp.*,
    333 F. Supp. 2d 1265 (M.D. Ala. 2004) ...............................................................................17

*Isaacs v. One Touch Direct, LLC*,
    No. 14-1716, 2015 WL 248658 (M.D. Fla. Jan. 20, 2015).....................................................14

*Johnsey v. BAL TK, LLC*,
    No. 18-643, 2019 WL 3997072 (N.D. Ala. Aug. 23, 2019) ..................................................23

*In re JPMorgan Chase & Co.*,
    916 F.3d 494 (5th Cir. 2019) ................................................................................................21

*Kessler v. Lifesafer Serv. Providers, LLC*,
    545 F. Supp. 2d 1244 (M.D. Fla. 2008)................................................................................20

*Lara v. G&E Fla. Contractors, LLC*,
    No. 15-20306, 2015 WL 4760678 (S.D. Fla. July 21, 2015)................................................23

*Leo v. Sarasota County School Board*,
  No. 16-3190, 2017 WL 477721 (M.D. Fla. Feb. 6, 2017)..................................................12, 24

*Lewis v. Wells Fargo & Co.*,
  669 F. Supp. 2d 1124 (N.D. Cal. 2009) ........................................................................23

*Lytle v. Lowe's Home Ctrs., Inc.*,
  No. 12-1848, 2014 WL 103463 (M.D. Fla. Jan. 10, 2014)..........................................14

*Manzi v. Hartman & Tyner, Inc.*,
  No. 11-60426, 2011 WL 2672343 (S.D. Fla. July 8, 2011)..........................................10

*McGuire v. Intelident Sols., LLC*,
  385 F. Supp. 3d 1261 (M.D. Fla. 2019) ......................................................................21

*Morgan v. Family Dollar Stores, Inc.*,
  551 F.3d 1233 (11th Cir. 2008) ..................................................................................12

*Palacios v. Boehringer Ingelheim Pharmaceuticals, Inc.*,
  No. 10-22398, 2011 WL 6794438 (S.D. Fla. Apr. 19, 2011) ........................................ *passim*

*Palma v. MetroPCS Wireless, Inc.*,
  No. 13-698, 2013 WL 6597079 (M.D. Fla. Dec. 16, 2013) ..........................................14

*Pickering v. Lorillard Tobacco Co.*,
  No. 10-633, 2012 WL 314691 (M.D. Ala. Jan. 31, 2012)......................................12, 15, 17, 19

*Reyna v. Int'l Bank of Commerce*,
  839 F.3d 373 (5th Cir. 2016) ........................................................................................7

*Rife v. Fronton Holdings, LLC*,
  219 F. Supp. 3d 1256 (S.D. Fla. 2016) ........................................................................11

*Roberson v. Rest. Delivery Developers, LLC*,
  No. 17-769, 2017 WL 4124862 (M.D. Fla. Sept. 18, 2017)..........................................14

*Robinson v. Empire Equity Grp., Inc.*,
  No. 09-1603, 2009 WL 4018560 (D. Md. Nov. 18, 2009) ..........................................23

*Russell v. Wells Fargo & Co.*,
  No. 07-3993, 2008 WL 4104212 (N.D. Cal. Sept. 3, 2008)..........................................23

*Sharif v. Wellness Int'l Network, Ltd.*,
  376 F.3d 720 (7th Cir. 2004) ........................................................................................7

*Silfee v. Automatic Data Processing, Inc.*,
  696 F. App'x 576 (3d Cir. 2017) ..................................................................................7

*Smith v. Cable Wiring Specialist, Inc.*,
No. 14-0277, 2014 WL 4795160 (M.D. Fla. Sept. 25, 2014)................................23

*Solar v. Minority Mobile Sys., Inc.*,
No. 14-22028, 2014 WL 5494587 (S.D. Fla. Oct. 30, 2014) .............................24

*Tussing v. Quality Res., Inc.*,
No. 09–1833, 2009 WL 4350253 (M.D. Fla. Nov. 25, 2009) ......................10, 13

*Vondriska v. Premier Mortg. Funding, Inc.*,
564 F. Supp. 2d 1330 (M.D. Fla. 2007)............................................12

*Walthour v. Chipio Windshield Repair, LLC*,
745 F.3d 1326 (11th Cir. 2014) ...................................................7

*Webber v. Coast Dental, PA*,
No. 12-1505, 2013 WL 935772 (M.D. Fla. Mar. 11, 2013) ...........................10

*West v. Verizon Commc'ns, Inc.*,
No. 08-1325, 2009 WL 2957963 (M.D. Fla. Sept. 10, 2009)...........................8

*Whitaker v. Kablelink Comm'ns, LLC*,
No. 13-2093, 2013 WL 5919351 (M.D. Fla. Nov. 4, 2013)........................14, 20

*White v. KCPAR, Inc.*,
No. 05-1317, 2006 WL 1722348 (M.D. Fla. Jun. 20, 2006) .........................9, 10

*Zamis v. Duffy's Mgmt., Inc.*,
No. 12-14136, 2012 WL 13134531 (S.D. Fla. Nov. 7, 2012) ...........................9

**Statutes**

29 U.S.C. § 255(a) ..............................................................24

**Other Authorities**

29 C.F.R. § 541.201(a)...........................................................19

29 C.F.R. § 541.201(b) ..........................................................19

29 C.F.R. §§ 541.300, 541.100, 541.500 ...........................................19

Fed. R. Civ. P. 23 ................................................................8

I.      **<u>INTRODUCTION</u>**

Plaintiff Dusty Leitzke is a consumer and business banking Fraud Compliance Operations and Investigations ("FCOI") Investigator at JPMorgan Chase Bank, N.A. ("Chase") who alleges that she was misclassified as overtime exempt.  She seeks to certify a nationwide collective action of FCOI Investigators, notwithstanding a lack of interest from the putative collective; material differences in the job duties each performed and the level and type of decision-making authority each exercised; and even whether each was eligible for overtime pay. Even under the lenient standard applied to Plaintiff's motion, Plaintiff has failed to make the threshold showing required to conditionally certify an FLSA collective action.

Plaintiff's certification motion is unusual for a number of reasons, including the fact that ***Plaintiff herself cannot pursue her misclassification claim in court*** pursuant to her binding arbitration agreement (BAA).  Chase has filed a motion to compel arbitration as to the claims of Plaintiff and five of the six individuals who opted-in to this action (the "Opt-ins").  That motion should be decided first because, if granted, Plaintiff cannot pursue in court her claim or anyone else's.

Plaintiff's motion also is unusual because there is only one individual without a BAA, and thus with a viable claim, who has demonstrated interest in the action – Opt-in Ophelia Hawkins.  This Court and others have held that this is an insufficient showing of interest to certify a collective action.

Further, the only person who has come forward with a viable claim – Ms. Hawkins – has described a wholly different experience as an FCOI investigator than Plaintiff despite working in the same Tampa location.  Plaintiff declares that her "primary job duty" is:  "perform[ing] computer-based production work" which only requires the application of "detailed written Chase guidelines to individual banking cases" and that does not "require[] me to exercise discretion and

judgment with respect to matters of significance."  Hawkins, by contrast, just two months ago described her job as "making and documenting ***critical regulatory reporting decisions***," "gather[ing] thorough/accurate evidence," "***analyzing*** individual cases," and "***mak[ing] decisions and independent judgment calls autonomously***."  (emphasis added).  This Court need not make credibility determinations or evaluate the merits of Plaintiff's claims to conclude that this case is not appropriate for conditional certification.  To the contrary, taking Ms. Leitzke's conclusory declaration and Ms. Hawkins' own words at face value demonstrates that there are material differences between the work experiences of just those two individuals, let alone the remaining class members, that make this case inappropriate for conditional certification.

Plaintiffs' remaining evidence consists of declarations from the remaining Opt-ins – all of whom work in the same Tampa location and signed BAAs – that contain boilerplate, conclusory allegations of the type that numerous courts have deemed insufficient to support conditional certification.  Other FCOI investigators describe different experiences than Plaintiff and the Opt-Ins.   For example, Joseph Jennings testifies that he investigates suspicious activities involving credit cards by comparing the transactions before a bounced payment with the transactions that follow and determining whether a suspicious activity report ("SAR") should be filed.  Ex. 1, Jennings Decl. ¶ 8.  Heather Bravo, by contrast, does not investigate suspicious activity or make SAR determinations at all; instead, she supervises multiple teams to develop capacity planning, coordinate assignments, and forecast workloads for the other FCOI Investigators.  Ex. 2, Bravo Decl.¶¶ 4-5.  And Harita Khanijo does not do either of those things; her job is to review SARs to ensure that the Investigator handling the case included all the required information, and that the Investigator has gathered supporting documentation and prepared a sufficiently reasoned, thorough analysis of their conclusion.  Ex. 3, Khanijo Decl.¶ 2.

In short, Plaintiff has not made the threshold showing that would justify nationwide notice.  Indeed, her claims are not even appropriately before this Court in light of her BAA, and the only person ready to stand in her place just recently touted the judgment and independent judgment she enjoys, and that Plaintiff reportedly lacks.  Chase therefore respectfully asks this Court to deny Plaintiff's motion for conditional certification.  In the event that the Court grants Plaintiff's motion in part, notice should be limited to Chase's Tampa location and only those putative collective action members who have not signed BAAs, in accordance with the Fifth Circuit's recent holding.

II.  **KEY FACTS**

   A.  **Some Members Of The Proposed Collective Receive Overtime, And Some Do Not.**

The proposed collective is comprised of Investigators, Senior Investigators, and Investigations Specialists.  While Investigators and Senior Investigators are exempt, Investigations Specialists have been treated as non-exempt throughout the statute of limitations period and received overtime pay.  *See* Ex. 4, Declaration of DeJuan Taylor ("Taylor Decl.") ¶ 4.

   B.  **Some Members Of The Proposed Collective Determine If SARS Should Be Filed And Others Do Not.**

Plaintiff and the Opt-ins argue that they lack the independent judgment and discretion of exempt employees because they apply "detail[ed] written Chase guidelines to individual banking cases" to determine whether to file a SAR, Pl's Ex. A-G, ¶¶10-11.  But some Investigators do not file SARs at all and instead supervise and coordinate the workflows of other Investigators – tasks to which guidelines do not apply.  *See* Exs. 2, 5, McLoughlin Decl. ¶¶ 4-5; Bravo Decl. ¶¶ 4-5.  Still other Investigators are responsible for reviewing their colleagues' determinations for errors and logical inconsistencies.  *See* Exs. 3, 6, Khanijo Decl. ¶ 4; Pinkerton Decl. ¶ 3.

3

**C.      Some Members Of The Proposed Collective Have Production Goals And Others Do Not.**

Plaintiff and the Opt-Ins characterize their role as non-exempt "production work," with SAR production goals that they work overtime to meet.  Pl's Ex. A-G, ¶¶ 10-11.  Other FCOI Investigators, by contrast, do not file SARs, McLoughlin Decl. ¶ 4, do not have production goals, Bravo Decl. ¶ 2, and/or rarely if ever work more than 40 hours per week.  *See, e.g.*, Exs. 1-2, 5, 7-9, Riebau Decl. ¶ 6; Autrey Decl. ¶ 7; Jennings Decl. ¶ 9; Billera Decl. ¶ 4.

**D.      Members Of The Proposed Collective Who Issue SARS Differ In The Documents They Review, Types Of Fraud Determinations They Make, And Trainings They Receive.**

Significant differences exist even among those who do investigate and make SAR determinations.  Most FCOI Investigators who make SAR determinations investigate fraud occurring in a specific area at Chase, such as auto loan, home or commercial mortgage, consumer business banking, or credit card.  *Compare* Exs. 1, 8, 10, Jennings Decl.; Autrey Decl.; Fadul Decl.  Different types of fraud often require different types of investigation and analysis.  For example, an Investigator investigating possible credit card fraud might review all of the transactions charged to a card and payments to the card to determine if the charge pattern seemed consistent with the cardholder history, and if a transactions were made with no intent of paying the card back, or whether there was actually another type of fraud involving a third party, and the Chase cardholder was not a bad actor.  Ex. 1, Jennings Dec. ¶ 7-8.  In contrast, an Investigator reviewing possible fraud involving consumer and business banking accounts might review wire transfers, ATM transactions, checks and other materials related to the bank accounts and possible subjects involved to determine if check fraud, or other types of banking fraud, were occurring.  Ex. 8, Autrey Decl. ¶ 5.

**E.      Some Members Of The Proposed Collective Claim To Rely Heavily On Guidelines And Job Aids, While Others Do Not.**

The different types of fraud being investigated have different guidelines and require different training (Ex. 11, Declaration of Joseph Trapp ("Trapp Decl.") ¶ 5).  While Plaintiff and the Opt-ins state that there are currently training calls in which Investigators and Senior Investigators must participate, these quarterly calls are merely on updates to the computer system that is used to enter SARs.[1]  Trapp. Decl. ¶ 6.

Moreover, while Plaintiff concludes that she makes determinations solely based on guidelines, others state that there is no single set of guidelines that addresses all of the various facts or circumstances an Investigator might encounter.  Exs. 6-7, 12-13, Castillo Decl.  ¶ 3; Riebau Decl.¶ 5; Morath Decl. ¶ 6; Pinkerton Decl. ¶ 4.  To the extent that certain Investigators refer to guidelines and job aids, it is often only to assist them in the *logistics* of evidence collection and SAR reporting, rather than to replace their own judgment as to whether fraudulent activity has occurred.  Exs. 7, 10, 12-14, Castillo Decl. ¶¶ 3-4; Riebau Decl. ¶ 5; Morath Decl. ¶ 6; Fadul Decl. ¶ 5; Skinner Decl. ¶¶ 4-5.

Indeed, just a couple of months ago, opt-in Hawkins represented that she uses her own analysis and independent judgment calls in making "critical regulatory reporting decisions."  Ex. 11, Trapp Decl. ¶ 7 & Ex. 1.  Hawkins is not alone: other Investigators and Senior Investigators likewise rarely refer to guidelines, and instead rely on their independent judgment in critical tasks such as identifying the suspect, determining whether fraud occurred, and deciding whether to file a SAR.  *Compare, e.g.,* Exs. 1, 3, 6-8, 13-14, Khanijo Decl. ¶ 4; Autrey Decl. ¶ 6; Riebau

---

[1] While Plaintiff and the Opt-ins emphasize their use of the same FCIP system, they ignore that Investigators access different documentation on different software platforms (for example, an Investigator dealing with subpoenas might use LAW, which details check activity, and LAD, which tracks money sent electronically, but these systems would not be used by an Investigator reviewing suspected auto loan fraud).  Ex. 7, Riebau Decl. ¶ 3

Decl. ¶ 5; Jennings Decl. ¶¶ 7-8; Castillo Decl. ¶¶ 3-4; Morath Decl. ¶ 6; Pinkerton Decl. ¶ 4;

Skinner Decl. ¶¶ 4-5 *with* Pl's Ex. A-G, ¶¶ 10.  For example, Jennings explained that when a

person makes a bad payment on a credit card, it is a judgment call whether the customer is trying

to commit fraud and has no intention of repaying the charges, or whether it is an error, like

accidentally overdrawing their account.  Ex. 1, Jennings Decl. ¶¶ 7-8.  Reasonable people might

disagree on the same set of facts.  *Id.  See also, e.g.*, Ex. 15, McGee Decl. ¶ 3 (uses independent

judgment to determine who is the proper suspect in possible credit card fraud, whether

suspicious activity is fraudulent and whether it should count toward a SAR filing); Ex. 8, Autrey

Decl. ¶ 6 (uses independent judgment to determine if customer is a victim or suspect, and

whether a SAR should be filed); Ex. 16, Hicks Decl. ¶ 5 (has broad discretion to determine

whether suspicious transactions should be further investigated or whether they are innocuous,

how to conduct the investigation, and what conclusions to draw from the evidence); Ex. 14,

Skinner Decl. ¶¶ 5-7 (has developed own method of conducting investigations and uses

independent judgment to determine what exactly to investigate, to analyze the customer's

behavior and determine whether he thinks fraud occurred and, if so, who to identify as the

subject).

     In summary, there are differences among the proposed collective in whether or not they

receive overtime, what their particular job duties are, whether or not they have daily targets, the

training they receive, the focus of their investigations, their adherence to guidelines, and their use

of judgment and discretion in performing their duties.

## III.   ARGUMENT

### A.   The Motion To Compel Arbitration Should Be Decided First And Moots The Motion for Conditional Certification.

Plaintiff and five of the six Opt-ins are subject to a pending motion to compel arbitration, which this Court should decide before addressing certification.  *See, e.g.*, *Compere v. Nusret Miami, LLC*, 396 F. Supp. 3d 1194, 1197-98 n.5 (S.D. Fla. 2019) ("the Court considers the Motions to Compel before the Motion to Certify in light of federal policy favoring arbitration"); *Reyna v. Int'l Bank of Commerce*, 839 F.3d 373, 377 (5th Cir. 2016) ("whether the named plaintiffs must arbitrate their claims should be decided well before the nationwide notification issue is reached.") (quotations omitted); *Silfee v. Automatic Data Processing, Inc.*, 696 F. App'x 576, 577 (3d Cir. 2017); *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004).  Otherwise, the Court runs the risk of "conditionally certify[ing] a collective action solely on the basis of a claim that the plaintiff was bound to arbitrate and was therefore barred from bringing it in court in the first place."  *Reyna*, 839 F.3d at 377.  Indeed, as the court explained in *Palacios v. Boehringer Ingelheim Pharmaceuticals, Inc.*, No. 10-22398, 2011 WL 6794438, at *4 (S.D. Fla. Apr. 19, 2011), the named plaintiff's execution of a waiver precluding her from serving as a class representative in a collective action is alone a basis to deny a motion for conditional certification.  *See also Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1329 n.2 (11th Cir. 2014) (affirming order compelling arbitration and dismissing action where the named plaintiffs had arbitration agreements, despite presence of additional opt-in plaintiffs).

### B.   Even If Plaintiff Were Not Barred From Litigating Her Claims In Court, She Has Failed To Meet The Standard For Conditional Certification.

#### 1.   Standard of Review.

"[D]espite the difference between a collective action and a class action and the absence from the collective-action section of the Fair Labor Standards Act of the kind of detailed

procedural provisions found in Rule 23, there isn't a good reason to have different standards for the certification of the two different types of action, and the case law has largely merged the standards, though with some terminological differences." *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013) (citation omitted).  Even under a lenient pre-discovery standard, "[conditional] *certification issues cannot be decided in a vacuum[,]*" "[i]t is entirely appropriate for the Court *to be cognizant of the factual and legal issues* presented by the case . . . ." *West v. Verizon Commc'ns, Inc.*, No. 08-1325, 2009 WL 2957963, at *4 (M.D. Fla. Sept. 10, 2009) (denying conditional certification of off the clock claims) (emphasis added).  *See also Demauro v. Limo, Inc.*, No. 10-413, 2011 WL 9191, at *3 (M.D. Fla. Jan. 3, 2011) (denying conditional certification of independent contractor misclassification action because claims required "individualized inquires" into "fact intensive" issues) (Covington, J.); *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016) (vacating conditional certification because plaintiffs failed to present "common proof" addressing key factual questions of liability).

The touchstone for conditional certification is judicial efficiency.  *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).  Thus, a plaintiff seeking conditional certification must establish both that there are "a sufficiently large number of purported class action members who wish to join the lawsuit[,]" and that the putative collective action members are similarly situated.  *Benitez v. Balans L.C.*, No. 10-22811, 2010 WL 11602404, at *3 (S.D. Fla. Dec. 6, 2010); *see also Chalker v. Burlington Coat Factory of Fla., LLC*, No. 12-2755, 2013 WL 5954783, at *1 (M.D. Fla. Nov. 7, 2013) (same).  Plaintiff has not established either of these elements.

### 2.     Plaintiff Has Not Established A Sufficient Number Of Putative Collective Action Members Would Be Interested In Joining The Suit.

To warrant collective status, there must be sufficient evidence that a class of aggrieved persons wishes to join this litigation.  *See Benitez*, 2010 WL 11602404, at *3; *see also White v. KCPAR, Inc.*, No. 05-1317, 2006 WL 1722348, at *3 (M.D. Fla. Jun. 20, 2006) ("Plaintiff has not shown with any specificity that the putative class warrants 'collective class' status, as opposed to the Court allowing the two additional individuals to merely opt-in and join the case as additional named Plaintiffs at this stage in the litigation.") (Covington, J.); *Goodrich v. Covelli Family Ltd. P'ship*, No. 11-1715, 2012 WL 1081473, at *3 (M.D. Fla. Mar. 30, 2012) (Covington, J.).   Here, while Plaintiff's counsel have filed forms for seven opt-ins (including Plaintiff), all but one – Hawkins – are subject to individual arbitration and therefore cannot be considered when assessing whether there is sufficient interest in joining the suit.  *See, e.g.*, *Hart v. JPMorgan Chase Bank, NA*, No. 12-470, 2012 WL 6196035, at *2, *4 (M.D. Fla. Dec. 12, 2012) (where four of the seven declarants were "not viable opt-in plaintiffs" because, for example, their claims were time barred or subject to mandatory arbitration, the total number of individuals in the putative collective did not warrant certification); *Zamis v. Duffy's Mgmt., Inc.*, No. 12-14136, 2012 WL 13134531, at *3 (S.D. Fla. Nov. 7, 2012) (denying conditional certification where plaintiff failed to demonstrate sufficient interest in joining collective because one of the two other employees who expressed interest did not work for defendants during the relevant time period).   No one else has come forward despite Plaintiff's counsel's stated intent to increase his efforts to solicit additional opt-ins.  *See* Dkt. 90-1, Alamuddin Decl. ¶ 4.[2]

---

[2] Plaintiff and the Opt-ins all allege in their cookie-cutter declarations that they each "believe" more Investigators "would likely" come forward if made aware of this litigation.  Exhibits A-C, E-G, ¶ 22; Exhibit D ¶ 23.  However, it is well-established that "a plaintiff's or counsel's belief in the existence of other employees who may desire to opt-in is insufficient to justify notice to a potential class." *Palacios*, 2011 WL 6794438, at *4 (citing *Haynes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir. 1983)); *see also Dimery v. Universal Prot. Serv., LP*, No. 15-2064, 2016 WL 7666136,

But one person does not a collective action make.  In fact, this Court has repeatedly found that *four* individuals are insufficient to warrant conditional certification.  *See, e.g., Webber v. Coast Dental, PA,* No. 12-1505, 2013 WL 935772, at *3 (M.D. Fla. Mar. 11, 2013) (denying certification where only two named plaintiffs and two opt-ins demonstrated interest in suit); *Goodrich,* 2012 WL 1081473, at *3 (denying certification where only four plaintiffs demonstrated interest) (Covington, J.); *White*, 2006 WL 1722348, at *3.  The Court should deny Plaintiff's motion for conditional certification on this basis alone.

3.   **Plaintiff Has Not Met Her Burden to Demonstrate All FCOI Investigators, Senior Investigators, and Investigations Specialists Are Similarly Situated.**

i.   ***The proposed class is not similarly situated because they are not uniformly classified as exempt.***

Plaintiff represents to the Court that all Investigators within the proposed collective are classified as exempt, did not receive overtime, and were paid on a salary basis.  *See* Pl's Br. at 2, 14.  This is incorrect.

Plaintiff cites to Chase's Answer in support of this assertion, but Chase's Answer admits only that those with the specific job title "Investigator" in FCOI are exempt, and denies the remaining allegations, including any claim that Investigations Specialists are exempt and paid on a salary basis.  Dkt. 17, Answer ¶¶ 16-17, 28, 42.  In fact, Investigations Specialists are non-exempt and receive overtime pay.  *See* Ex. 4, Taylor Decl. ¶ 4.  The inclusion of both exempt and non-exempt employees in the class definition alone is a basis to deny certification.  *See, e.g.,* Dkt. 1, Complaint ¶ 3; *Tussing v. Quality Res., Inc.*, No. 09–1833, 2009 WL 4350253, at *3 (M.D. Fla. Nov. 25, 2009) (the mixing of exempt and non-exempt employees does not lend itself

---

at *5 (M.D. Fla. Mar. 24, 2016); *Manzi v. Hartman & Tyner, Inc.*, No. 11-60426, 2011 WL 2672343, at *3 (S.D. Fla. July 8, 2011).

to proceeding by way of a conditional class because it is overbroad); *Rife v. Fronton Holdings, LLC*, 219 F. Supp. 3d 1256, 1260 (S.D. Fla. 2016) (same).[3]

### ii.   *Common exempt classification alone does not warrant certification.*

Even if Plaintiff were to exclude Investigations Specialists from the class, common exempt classification alone is not enough for certification.  *See, e.g., Demauro*, 2011 WL 9191, at *3; *Palacios*, 2011 WL 6794438, at *6; *Brooks v. A. Rainaldi Plumbing, Inc.*, No. 06-0631, 2006 WL 3544737, at *2 (M.D. Fla. Dec. 8, 2006); *Herrera v. Mattress Firm, Inc.*, No. 17-22048, 2017 WL 4270619, at *6 (S.D. Fla. Sept. 26, 2017).  Otherwise, courts would certify every misclassification case.

Rather, Plaintiff must come forward with "'substantial' and 'detailed' allegations supported by affidavits" or other evidence reflecting that:  (1) the proposed class is similarly situated with respect to the job requirements as they relate to the applicable FLSA exemption(s); and (2) demonstrating that she will be able to "rely on common evidence to prove that each putative plaintiff is due overtime because he or she falls outside every relevant exemption." *Palacios*, 2011 WL 6794438, at *5-6 (denying conditional certification because "whether a Pharma Rep is 'exempt' necessarily involves a fact-by-fact-inquiry into the circumstances of his or her employment to assess if he or she falls within an exemption"); *see also Hart*, 2012 WL 6196035, at *5 (denying certification and explaining that "[i]n determining whether employees are similarly situated, a court must consider whether the employees are similar with respect to *their job requirements*") (emphasis added); *Demauro*, 2011 WL 9191, at *3-4.

---

[3] *See also Butler–Jones v. Sterling Casino Lines, LP*, No. 08–1186, 2008 WL 5274384, *7 (M.D. Fla. Dec. 18, 2008); *Carruthers v. Keiser Sch., Inc.*, No. 09-2641, 2010 WL 5055876, at *1 (M.D. Fla. Dec. 3, 2010) (Covington, J.).

Contrary to Plaintiff's argument, therefore, variations in job duties are absolutely relevant at the conditional certification stage of a misclassification case.  Plaintiff cites only one case in support of her position, which goes against the weight of more recent authority in this circuit. *Compare Vondriska v. Premier Mortg. Funding, Inc.*, 564 F. Supp. 2d 1330, 1335 (M.D. Fla. 2007) *with Palacios*, 2011 WL 6794438, at *5-6; *Hart*, 2012 WL 6196035, at *5; *Pickering v. Lorillard Tobacco Co.*, No. 10-633, 2012 WL 314691, at *11-12 (M.D. Ala. Jan. 31, 2012); *Gross v. Pelican Point Seafood of Tarpon Springs, LLC*, No. 17-1208, 2017 WL 3316632, at *2 (M.D. Fla. Aug. 3, 2017); *Dimery*, 2016 WL 7666136, at *3.[4]

        **iii.**    ***The Court need not make credibility determinations to conclude that the proposed collective is not similarly-situated in their job duties.***

Plaintiff has not shown that the collective is similarly situated with respect to their job duties.  She provides only conclusory assertions that "all Investigators perform the same or similar primary duties" in boilerplate declarations.  Pl's Exs. A-G, ¶ 13.  That does not suffice. *See Hart*, 2012 WL 6196035, *4 ("federal courts across the Middle and Southern Districts of Florida have routinely denied requests for conditional certification where plaintiffs attempt to certify a broad class based only on the conclusory allegations of a few employees.") (quotations omitted).[5]

---

[4]  Plaintiff's other cases are inapposite.  *Leo v. Sarasota  County School Board*, No. 16-3190, 2017 WL 477721 (M.D. Fla. Feb. 6, 2017), is an *off the clock* case involving bus drivers who claimed that they were not properly compensated because, pursuant to the CBA, their pay was based on certain estimated, and not actual, time of their driving routes.  The *Leo* court quoted *Vondriska* for the proposition that variations in specific job duties or defenses would not defeat certification, but differences in job duties in an off-the-clock case do not go to the key issue of liability as they would in a misclassification case.  *Hipp* is an age discrimination case under the ADEA.  *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001).  *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233 (11th Cir. 2008), is an appeal after multiple jury trials where the factfinder concluded the job duties relevant to the executive exemption (such as ability to hire, fire, and percentage of time spent on managerial duties, etc.) were the same for store managers nationwide, and although the defendant argued there were differences "there was scant evidence to support this argument" as to any facts relevant to the executive exemption.  *Id.* at 1262-63.

[5]  *See also Holmes v. Quest Diagnostics, Inc.*, No. 11-80567, 2012 WL 12876965, at *2 (S.D. Fla. June 14, 2012) (denying conditional certification where "Plaintiffs' Declarations are carbon copies of each other" because "[t]his

In contrast to Plaintiff and the Opt-ins' cookie cutter declarations, which speak only in generalities and legal conclusions, declarations from others show stark and material differences among multiple job titles and positions within the class of "Investigators."  Some Senior Investigators are responsible for workflow coordination and supervision of other Investigators, and do not investigate or make recommendations as to whether Chase should file a regulatory SAR at all.  *See* Exs. 2, 5, McLoughlin Decl. ¶¶ 4-5; Bravo Decl. ¶¶ 4-5.   Other Investigators are not responsible for making the primary determination of whether a SAR will be filed, but review the recommended SAR or recommendation not to file a SAR for errors and logical inconsistencies.  *See* Exs. 3, 6, Khanijo Decl. ¶ 4; Pinkerton Decl. ¶ 3.  Yet other Investigators specialize in different areas that require different processes and analyses in order to assess fraud.  *Compare* Exs. 1, 8, 10, Jennings Decl. (credit card), Autrey Decl. (CCB), Fadul Decl. (subpoena).  And while Plaintiff and the Opt-ins claim that "working overtime hours …is a routine and necessary part of the Investigator job" based on their alleged experiences regularly working close to 70 hours per week, Pl's Ex. A-G ¶¶ 6-10, other Investigators rarely or never

---

Court, like other courts, 'strongly disapproves' of the use of such boilerplate and 'cookie cutter' Declarations in this context" and "disapproval is particularly pronounced in this case because . . . the Plaintiffs have elected to cast their allegations in the most generalized terms, entirely devoid of particularity"); *Palacios*, 2011 WL 6794438, at *5 (denying conditional certification where plaintiff submitted "three almost identical, cut-and-paste declarations" containing the exact same statements about pharmaceutical representatives' job duties because the allegations were conclusory and provided no foundation for concluding all representatives' job duties were the same); *Tussing*, 2009 WL 4350253, at *3 (holding that "Plaintiffs' six affidavits are not substantial and detailed enough to satisfy this Court that a reasonable basis exists for conditional certification" where they "are largely the same affidavit signed by six different employees, with few minor differences"); *Beecher v. Steak N Shake Operations, Inc.*, 904 F. Supp. 2d 1289, 1294 (N.D. Ga. 2012) (denying conditional certification where "Plaintiffs proffer declarations replete with 'cookie-cutter' statements void of specificity" and they did not make sufficient showing they were similarly situated to putative class).  The cases Plaintiff cites granting certification despite conclusory declarations in her Opposition to the Motion to Compel Hawkins' Deposition  (Dkt. 81 at 11) are not from the Eleventh Circuit and mostly also are ones in which defendants did not submit more fact-specific declarations demonstrating the plaintiff and opt-in were not similarly situated to other putative class member.  *See, e.g., Bollinger v. Residential Capital*, 761 F. Supp. 2d 1114, 1121 (W.D. Wash. 2011) (granting certification despite conclusory cookie-cutter declarations because defendant had not submitted declarations from other class members or other evidence that would contradict the plaintiff's claims of similarity); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, No. 06-715, 2008 WL 793838, at *4 (N.D. Cal. Mar. 24, 2008) ("Defendants do not offer a single declaration from a 24 Hour Fitness employee . . . contradicting the Trainer's declarations").

work overtime.  *See, e.g.*, Exs. 1, 7-9, Riebau Decl. ¶ 6; Autrey Decl. ¶ 7; Jennings Decl. ¶ 9;

Billera Decl. ¶ 4.

Plaintiff would have this Court ignore all of Chase's evidence, relying on *Ciani v. Talk of*

*the Town Rests., Inc*., No. 14-2197, 2015 WL 226013, at *4 (M.D. Fla. Jan. 16, 2015).  That was

a tip credit case, where the court said it "considers, but is not convinced by, [Defendant's]

affidavits, including affidavits filed by current employees indicating *contradictory* information

on overtime and tip practices."  *Id.* (emphasis added) (Covington, J.).

Here, Chase is not asking the Court to resolve conflicting testimony or make any

determination on the merits.  Rather, Chase's declarations from individuals who have had

materially different work experiences than Plaintiff go to the threshold question of whether it

will be possible to resolve this case with common evidence for the entire class.  Numerous courts

have held that such analysis is appropriate at the first stage.  *See, e.g., Demauro*, 2011 WL 9191,

at *3-4; *Palacios*, 2011 WL 6794438, at *5-6; *Herrera*, 2017 WL 4270619, at *7 (stating it is

appropriate to determine if "individualized assessment[s]" will be necessary which "'eviscerates

all notions of judicial economy that would otherwise be served by conditional certification.'")

(citation omitted).[6]

---

[6] In contrast to this case, defendants in the other cases cited by Plaintiff did not submit numerous, detailed declarations explaining how their job duties were different from the plaintiff's affiants in material ways.  *See Roberson v. Rest. Delivery Developers, LLC*, No. 17-769, 2017 WL 4124862, at *3 (M.D. Fla. Sept. 18, 2017) (independent contractor misclassification case where defendant did "not challenge that a class of similarly situated delivery drivers exist[]"), *decertified by*, 320 F. Supp. 3d 1309, 1321 (M.D. Fla. 2018); *Whitaker v. Kablelink Comm'ns, LLC*, No. 13-2093, 2013 WL 5919351, at *3 (M.D. Fla. Nov. 4, 2013) (independent contractor misclassification case where defendant submitted a single conclusory declaration); *Green v. Grand Villa of St. Petersburg*, No. 15-1973, 2015 WL 7777537, at *3 (M.D. Fla. Dec. 3, 2015) (off the clock case where job duties were not at issue); *Isaacs v. One Touch Direct, LLC*, No. 14-1716, 2015 WL 248658 (M.D. Fla. Jan. 20, 2015) (off the clock case also alleging that commissions were not included in regular rate and involving only four sites in Tampa); *Lytle v. Lowe's Home Ctrs., Inc*., No. 12-1848, 2014 WL 103463, at *3-4 (M.D. Fla. Jan. 10, 2014) (where plaintiff submitted declarations from over 60 Human Resource Managers describing the same job duties this was enough for conditional certification despite defendant's argument that there would be variation); *Palma v. MetroPCS Wireless, Inc.*, No. 13-698, 2013 WL 6597079, at *5 (M.D. Fla. Dec. 16, 2013) (declining to consider defendant's declaration, where, unlike here, it would require the court to "engage in a credibility analysis"); *Fiore v. Goodyear Tire & Rubber Co*., No. 09-843, 2011 WL 867043, at *3 (M.D. Fla. Mar. 10, 2011) (granting conditional

The same is true of Opt-in Hawkins' own words, in a resume submitted for a promotion just a few months ago and describing her Investigator job duties to a current second-level supervisor who would know if she were puffing. Ex. 11, Trapp Decl.¶ 7 & Ex. 1.  Plaintiff describes her "primary job duty" as "perform[ing] computer-based production work" "on the banking products Chase offers to customers" and that does not "require[] me to exercise discretion and judgment with respect to matters of significance."  Pl's Ex. A, ¶ 10.  Hawkins, however, describes her Investigator position as requiring her to make "decisions and independent judgment calls autonomously" on "critical regulatory reporting decisions."  Ex. 11, Trapp Decl. ¶ 7 & Ex. 1 (Hawkins resume).[7]  While it is true that Plaintiff's counsel subsequently submitted a declaration for Hawkins that parrots the same language as Plaintiff and the other opt-ins, the Court need not credit any of the parroted conclusions in that declaration in light of the more specific factual statements in her resume.  For example, in *Pickering*, the court refused to credit plaintiff's declaration alleging the job duties of all sales representatives were essentially the same, because he merely described his job duties in terms that "track[ed] the legal phrases cited in the relevant FLSA regulations . . . ." *Pickering*, 2012 WL 314691, at *11-12.  Instead, the court denied certification based on the differences in job duties demonstrated in declarations submitted by defendant.  *Id.*; *see also Fraticelli v. MSG Holdings, LP*, No. 13-6518, 2014 WL 1807105, at *2-3 (S.D.N.Y. May 7, 2014) (denying motion for conditional certification and crediting factually specific declarations submitted by defendant establishing differences where

certification where, *inter alia*, head of human resources testified that the duties of all services managers were essentially the same regardless of store, with only one exception)

[7] Opt-in Duane Hudson, who is subject to arbitration, in his LinkedIn resume says his job title is "Compliance Investigator" and describes his duties very differently than how Plaintiff's counsel describes them in the boilerplate declaration.  Hudson, *inter alia*, says he "independently conducts investigations," has to "determine/identify suspects and record findings," must "meet all the regulatory reporting requirements," and must "make through [sic] decisions autonomously using critical thinking and analytical skills to review financial information and draw appropriate conclusions."  *See* Declaration of Stephanie Reiss, ¶ 2 & Ex. A, attached hereto as Exhibit 17.

"[p]laintiffs' affidavits contain a number of unsupported and conclusory assertions that the Court will not credit").

### iv. *Plaintiff cannot paper over differences in the putative collective with generalized observations.*

Plaintiff would have the Court ignore material differences in job duties across the collective because she and Opt-ins claim to have "observed" one or two other Investigators in Tampa perform the same job duties. Pl's Exs. A-G ¶ 13. However, the observations of a handful of employees in one location is not enough to conclude that all Investigators are similarly situated nationwide, particularly where a defendant has submitted declarations demonstrating differences. *See, e.g.*, *Dimery*, 2016 WL 7666136, at *4 (denying conditional certification where plaintiffs' declarations stated they knew other security guards and became familiar with their job responsibilities because this was not enough to support their statement that "all . . . security guards were subjected to the same practices and procedures"); *Palacios*, 2011 WL 6794438, at *5 (denying conditional certification supported by three declarations claiming all representatives job duties were the same merely based on conversations with a few other representatives); *Fraticelli*, 2014 WL 1807105, at *2-3 (plaintiffs' statement in affidavit that he knew all interns were treated similarly based on discussions with them constituted an "unsupported and conclusory assertions that the Court will not credit").

Likewise, the fact that Investigators from multiple offices participated in training (Pl's Br. at 16, Exs. A-G, ¶ 15) is not evidence that all Investigators perform the same duties or even that all Investigators take that same training. In fact, Investigators that focus on different types of investigations receive different types of trainings on guidelines and job duties. *See* Ex. x, Trapp Decl. ¶ 5. Nothing in Plaintiff or the Opt-ins declarations contradicts that, as their declarations do not acknowledge the existence of such different areas of focus. While

16

Investigators and Senior Investigators do participate in quarterly training on updates to the FCIP

program, this does nothing to demonstrate that their job duties are the same, any more than

would a company-wide training on updates to Microsoft Outlook.  *See* Pl's Ex. A-G ¶ 15; Trapp

Decl. ¶ 6.

> **v.**  ***Far from binding the collective, Plaintiff's job postings only***
> ***underscore differences.***

Here, there are *at least five* different job descriptions for FCOI Investigators and Senior

Investigators, which vary based on whether the individual is an entry or mid-level Investigator, a

Senior Investigator, or an entry, mid-level or Senior Investigator in Inspection and Repair.

Taylor Decl. ¶ 5.  Regardless, "a standardized job description is insufficient to justify a

nationwide collective action based upon a claim that the employer improperly classified a

category of employees as exempt."  *Pickering*, 2012 WL 314691, at *12.  *See also Holt v. Rite*

*Aid Corp.*, 333 F. Supp. 2d 1265, 1271-73 (M.D. Ala. 2004) (declining to certify

misclassification claims merely because managers were all classified as exempt and had the

same job description).

Plaintiff's submissions underscore the point.  She has submitted two unauthenticated job

postings.  Pl's Br. at 16, Pl's Ex. H.  One posting is for an Investigations Specialist from early

October 2015, which predates the statute of limitations period and that position's reclassification

to non-exempt, and the other is for an Investigator.  Pl's Ex. H; Taylor Decl. ¶ 5.  Plaintiff's two

examples not only list different job expectations and qualifications, Pl's Ex. H, but also differ

from Plaintiff's description of her duties.  While Plaintiff claims to have exercised no discretion

in making SAR determinations, her own evidence states that Investigators have the "ability to

make [SAR] decisions autonomously, consulting with management and Senior Investigators on

more complex issues."  *Compare* Dkt. 75-8 at p. 3 *with* Pl's Ex. A-G ¶¶ 10-11.

> ### vi. *Written guidelines relating to job duties differ in content and importance depending on the Investigator.*

Plaintiff also argues that Chase applies "some Chase policies, procedures and guidelines" to all Investigators nationwide. However, these policies and procedures include things such as non-discrimination policies, leave policies, and Code of Conduct policies, which do nothing to show that Investigators are similarly situated with respect to the job duties at hand.[8] As for job guidelines, Plaintiff and the Opt-ins' declarations merely allege that they have trained other Investigators on the guidelines that ***they*** use, and that these guidelines were sent to multiple people. Pl's Ex. A-G, ¶ 15. These generalized observations from a handful of Tampa employees say nothing about whether all members of the putative collective operate under the same guidelines. Indeed, different Investigators that specialize in different types of fraud have different guidelines. Ex. 11, Trapp Decl. ¶ 3.

And while Plaintiff and the Opt-ins conclude that "Chase's written guidelines control whether a SAR is filed on a case" (Pl's Ex. A-G, ¶ 11), they provide no facts whatsoever to support that conclusion for themselves or the broader collective. Other members of the putative collective have different experiences. Some are not responsible for applying written guidelines to make SAR recommendations at all. Exs. 2, 5, McLoughlin Decl. ¶¶ 4-5; Bravo Decl. ¶ 4. Others testified that while the guidelines are a starting point, they still need to use their judgment and discretion to do tasks such as figuring out the right suspect, figuring out whether fraud has occurred that would warrant a SAR filing, or determining whether to send back a no-SAR recommendation. *See, e.g.*, Exs. 1, 3, 7, 13, Khanijo Decl. ¶ 4; Jennings Decl. ¶¶ 7-8; Riebau Decl. ¶ 5; Morath Decl. ¶¶ 2-6.

---

[8] The same is true of Plaintiff's allegation that all Investigators use the same computer system. Every employee of a given company might use Microsoft Outlook, but clearly this does not mean every single job in that company is the same.

Finally, Plaintiff argues that because the putative collective all have productivity goals, they are production employee not eligible for the administrative exemption.  Pl's Br. at 6, Exs. A-G ¶ 10.  But the administrative exemption does not even mention, much less turn on, productivity goals.  *See* 29 C.F.R. § 541.201(a) (discussing only "working on a manufacturing production line or selling a product in a retail or service establishment").  Many exempt employees have productivity goals, such as some inside legal counsel, who have billable requirements and are measured on how many cases they handle.  Regardless, not all FCOI Investigators even have such goals.  *See* Ex. 2, Bravo Decl. ¶ 2.[9]

### vii.    *Plaintiff cannot rely on legal assertions to establish job duties.*

As a last resort, Plaintiff proffers irrelevant legal conclusions.  Plaintiff and the Opt-ins assert they do not "perform work relating to Chase's general business operations or those of its customers," and "do not perform work which requires [them] to exercise discretion or judgment with respect to matters of significance to Chase." Pl's Ex. A-G ¶ 10.  These are legal conclusions, hewing to the exact language of the regulations.  *See, e.g., Pickering*, 2012 WL 314691, at *11-12 (rejecting declaration with legal conclusions about job duties that merely "track[ed] the legal phrases cited in the relevant FLSA regulations without any supporting factual details.").[10]  By contrast, other Investigators explain the basis for their assertion that they

---

[9] Plaintiff's emphasis on the fact that members of the putative collective do not need a college degree, do not manage other employees and do not sell outside the office (Pl's Br. at 14), is another red herring.  These facts, too, are not relevant to the administrative exemption.  *See supra*; *see also* 29 C.F.R. §§ 541.300, 541.100, 541.500 (discussing these facts as applicable to the professional, executive and outside sales exemptions).  In addition, the allegation about Investigators not managing other employees is inaccurate, and cites to a portion of Chase's Answer that only admitted this as to the Plaintiff.  *See* Dkt. 17, Answer ¶ 34.

[10] Plaintiff and the Opt-ins also assert that they are production workers because they "work on the banking products Chase offers to customers."  Pl's Br. at 6; Pl's Ex. A-G, ¶ 10.  It is not clear what Plaintiff and the Opt-ins means by "working on banking products."  Some Investigators may look at a checking account or credit cards statement, but they are not doing so in furtherance of creating, selling, or servicing those products.  Rather, some do so in order to determine whether it is appropriate to report conduct to a regulator.  *See, e.g.*, Ex. 7, Riebau Decl.  ¶¶ 2-5; Ex. 11, Trapp Decl. ¶ 7 & Ex. 1.  Such regulatory reporting is not production work.  *See* 29 C.F.R. § 541.201(b) (stating that work "directly related to management or general business operations" includes "legal and regulatory compliance");

do not perform production work, *i.e.*, they do not sell or produce any Chase products.  Exs. 5, 8,

10, Fadul Decl. ¶ 2; McLoughlin Decl. ¶ 3; Autrey Decl. ¶ 2.  Still others explain exactly ***how***

their work requires them to exercise independent judgment on matters of significance:

- Eric Autrey determines if certain customer banking actions are intentionally fraudulent by analyzing the customer's transaction history and statements they have made regarding the transaction at issue.  Ex. 8, Autrey Decl. ¶ 6.

- Derrick McGee determines whether a particular merchant should be a suspect in a credit card case – an issue over which reasonable Investigators could disagree.  Ex. 15, McGee Decl. ¶ 4

- Opt-In Hawkins described her Investigator position as requiring her to make "independent judgment calls autonomously" on "critical regulatory reporting decisions." Ex. 11, Trapp Decl. ¶ 7 & Ex. 1.

For all these reasons, Plaintiff has not established that her proposed class is similarly

situated and conditional certification should be denied.

### C.      If A Class Is Certified It Should Be Limited In Scope.

#### 1.      Any class certified should be limited to Tampa, FL

Plaintiff and the Opt-ins only submitted evidence of Investigator duties in Tampa during

the class period (June 2016-present).  Thus, if the Court were inclined to certify a collective, it

should be limited to Investigators in Tampa.  *See, e.g., Whitaker*, 2013 WL 5919351, at *3

---

*Fulwood-Kelley v. Cordis Corp.*, No. 09-20920, 2009 WL 5171752, at *10 (S.D. Fla. Dec. 22, 2009) ("Plaintiffs' primary duty—investigating complaints and determining whether they are reportable under federal and international regulations—included the exercise of discretion and independent judgment" on matters of significance). None of cases cited by Plaintiff dictates a contrary result.  *See Kessler v. Lifesafer Serv. Providers, LLC,* 545 F. Supp. 2d 1244, 1247 (M.D. Fla. 2008) (denying defendant's motion for summary judgment on the administrative exemption because there was a dispute of fact as to how much time service manager technicians spent collecting money from customers for installation of ignition interlock devices); *Deluca  Farmers Ins. Exch.*, 386 F. Supp. 3d 1235, 1252-53 (N.D. Cal. 2019) (granting plaintiffs' motion for summary judgment because insurance special investigators' primary duty was *only* conducting fact investigation to assist in avoiding paying fraudulent claims, and although they also referred almost all their claims to agencies this took almost no time and if this minor duty were eliminated the job would "remain largely the same"); *Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 118-30 (4th Cir. 2015) (same, explaining where primary duty is purely fact investigation to assist insurance company in avoiding paying fraudulent insurance claims, this does not fall within the administrative exemption).  In addition, Plaintiff and the Opt-ins repeatedly make the assertion that they do "computer-based production work," but in our modern economy, almost every white collar job does what could loosely be described as computer-based production work.

(limiting collective to Florida since neither the Plaintiff nor any declarant was from a location outside of Florida); *Gibbs v. MLK Express Servs., LLC*, No. 18-434, 2019 WL 2635746, at *3 (M.D. Fla. June 27, 2019) (limiting notice to Ft. Myers location where Plaintiffs worked).

The fact that Plaintiff claimed to work as an "Investigator" in Arizona in March 2015 is of no moment.  Pl's Ex. A ¶ 3.  Plaintiff worked in Arizona **before** the statute of limitations period.  *See* Ex. 4, Taylor Decl. ¶ 3. Additionally, her prior role of Investigations Specialist was reclassified as non-exempt in October 2015, again before the limitations period.  *See id.* ¶¶ 3-4. Her experience sheds no light on the current question:  whether putative collective action members during the covered period are sufficiently similar to one another such that their exempt status can be evaluated with common evidence.

### 2. <u>Any class certified should not include those with BAAs.</u>

In addition, if a class were to be certified (which it should not be), it should exclude those with BAAs, as they are not similarly situated to individuals with claims that can proceed in the current litigation.  Here, approximately 80% of the individuals who worked as Investigators and Senior Investigators in Tampa, Florida within three years of the filing of the Complaint are subject to a BAA.  Ex. 4, Taylor Decl. ¶¶ 6-7.  As the Fifth Circuit explained when reversing the district court and holding those with arbitration agreements may not receive a collective action notice:  "the purpose of giving discretion [to district courts] to facilitate notice [of collective actions] is because of the need for 'efficient resolution in one proceeding of common issues.' . . . [A]lerting those who cannot ultimately participate in the collective 'merely stirs up litigation,' which is what *Hoffmann-La Roche* flatly proscribes."  *In re JPMorgan Chase & Co.*, 916 F.3d 494, 502 (5th Cir. 2019) (quoting *Hoffmann-La Roche*, 493 U.S. at 170, 172-74); *see also McGuire v. Intelident Sols., LLC*, 385 F. Supp. 3d 1261, 1265–66 (M.D. Fla. 2019) (individuals "who may be subject to a valid arbitration agreement should be excluded from this collective

action at this notice stage"); *Dearth v. Hartford Fire Ins. Co.*, 16-1603, 2018 WL 4537474, at *1 (M.D. Fla. Sept. 4, 2018) ("The class of Analysts excludes employees who assented to Defendant's arbitration policy."), *R&R adopted sub nom. Bachmann v. Hartford Fire Ins. Co.*, No. 16-1603, 2018 WL 4502976 (M.D. Fla. Sept. 20, 2018).

Moreover, the Supreme Court has held that arbitration agreements—including agreements waiving the right to participate in collective actions—"must be enforced as written." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018).  Ignoring arbitration agreements — and inviting to collective actions employees who have promised not to join them — conflicts with the Federal Arbitration Act by failing to treat these agreements as enforceable.  Plaintiff does not dispute that the BAAs are valid and generally enforceable; she merely argues that Chase waived the right to enforce the BAAs specifically as to her and the five Opt-ins. *See* Dkt. 79.  Plaintiff is wrong for the reasons given in Chase's reply (Dkt. 90), but regardless, there could be no waiver for individuals who have not opted in.  *See, e.g.*, *Collado v. J&G Transp., Inc.*, No. 14-80467, 2015 WL 1478609, at *6–7 (S.D. Fla. Mar. 31, 2015) (holding that defendants had not waived right to compel arbitration of the claims of opt-in plaintiffs, even where defendants had engaged in FLSA litigation for over a year with named plaintiff, because the same was not true with respect to opt-in plaintiffs); *Compere,* 396 F. Supp. 3d at 1204 (holding that there was no waiver as to opt-in plaintiff Vargas where the motion to compel as to Vargas was filed less than a month after he opted-in).  Thus, because individuals with BAAs are not similarly situated to those without BAAs, and because inviting individuals with BAAs to participate in court litigation contradicts *Hoffman-La Roche,* and the FAA, such individuals should not be part of the collective.

### 3.   Any class certified should not include Investigations Specialists

Finally, if any class were to be certified, it should not include Investigations Specialists. They are not similarly situated to exempt Investigators and Senior Investigators because they have always been non-exempt within the statute of limitations period.  Ex. 4, Taylor Decl. ¶ 4.

### D.   Plaintiff's Proposed Notice Is Improper.

Plaintiff's proposed notice is improper for several reasons:

- Plaintiff's proposal to provide notice via both work and personal email is unnecessary, excessive and subject to risk of distortion.[11]

- Likewise, the Court should reject Plaintiff's request for reminder notices "because they are redundant and could be interpreted as encouragement by the Court to join the lawsuit."[12]

- Plaintiff's proposed notice fails to advise the recipients of the full extent of their potential involvement in the case, including the possibility that they may be required to travel to the Middle District of Florida to testify.[13]

- Plaintiff has improperly requested that she be given all putative collective action member contact information in order to decide at her discretion whether or not to use a third-party administrator for notice.  The Court should require a neutral third-party claims administrator (not counsel) to receive personal information and send notice of a lawsuit to protect the putative collective action members' privacy and ensure that contact information is not used for solicitations beyond Court-approved notice.[14]

---

[11] *See, e.g., Lara v. G&E Fla. Contractors, LLC,* No. 15-20306, 2015 WL 4760678, at *8 (S.D. Fla. July 21, 2015) (notice should be only be mailed rather than sent via mail and email), *R&R adopted,* 2015 WL 4768328 (S.D. Fla. Aug. 11, 2015)*; Gordon v. Kaleida Health,* No. 08-378, 2009 WL 3334784, at *11 (W.D.N.Y. Oct. 14, 2009) (refusing electronic notice because of the "risks of distortion or misleading notification through modification of the notice itself or the addition of commentary"); *Johnsey v. BAL TK, LLC,* No. 18-643, 2019 WL 3997072, at *5 (N.D. Ala. Aug. 23, 2019) (denying notice via email because "the record does not warrant service of notice by non-traditional means").

[12] *Smith v. Cable Wiring Specialist, Inc.,* No. 14-0277, 2014 WL 4795160, at *3 (M.D. Fla. Sept. 25, 2014).

[13] *See, e.g.*, *Czopek v. TBC Retail Grp., Inc.*, No. 14-675, 2015 WL 4716230, at *11 (M.D. of Fla. Aug. 7, 2015) (revising notice to include information that the potential class members may be called to physically appear in court in the Middle District of Florida).

[14] *See, e.g.*, *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1127 (N.D. Cal. 2009) (denying plaintiff's request for contact information and appointing a claims administrator); *Russell v. Wells Fargo & Co.*, No. 07-3993, 2008 WL 4104212, at *5 (N.D. Cal. Sept. 3, 2008) (same); *In re Am. Family Mut. Ins. Co. Overtime Pay Litig.*, No. 06-17430, 2009 WL 248677, at *4 (D. Colo. Feb. 3, 2009) (finding third-party administrator appropriate "to protect the integrity of the process"); *Robinson v. Empire Equity Grp., Inc.*, No. 09-1603, 2009 WL 4018560, at *5 (D. Md. Nov. 18, 2009)

23

- Plaintiff's proposed notice is temporally overbroad because the FLSA's limitations period is two years.  29 U.S.C. § 255(a).  A three-year limitations period can apply only in the case of a "willful" violation.  *Id.*  Numerous courts have held that a three year period is not appropriate where, as here, Plaintiff has not met her burden of showing any conduct by Defendant that was willful.[15]

- Plaintiff's proposed notice does not include contact information for Defendant's counsel.[16]

Thus, should the Court decide to conditionally certify any putative class, the Court should

limit and revise any notice in accordance with the objections described above.  Alternatively, the

Court should direct the parties to meet and confer and submit a mutually agreeable notice or, if

they cannot agree, to submit their separate proposals for the Court's decision.

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion.

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By:      *s/ Mark E. Zelek*
Mark E. Zelek (Florida Bar No. 667773)
200 South Biscayne Boulevard, Suite 5300
Miami, FL  33131-2339

---

(requiring that notice be mailed by a third-party administrator to "safeguard[] . . . the privacy of potential class members"); *Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) ("[P]laintiffs have no need for the additional inherently private information sought, including e-mail addresses, telephone numbers . . . ."); *Davida v. Newpark Drilling Fluids, LLC*, 14-0552, 2015 WL 13652730, at *4 (W.D. Tex. Jan. 6, 2015) (ordering a neutral third-party administrator to distribute notice).

[15] *See Cohen v. Allied Steel Bldgs., Inc.*, 554 F. Supp. 2d 1331, 1334–35 (S.D. Fla. 2008) (holding that plaintiff failed to set forth sufficient allegations to support court-ordered notice "that would extend beyond the two-year statute of limitations" because "[t]he only reference to any allegedly willful violations of the FLSA by [d]efendants is a conclusory allegation of willfulness in the Complaint absent any facts to substantiate the same"); *Solar v. Minority Mobile Sys., Inc.*, No. 14-22028, 2014 WL 5494587, at *4 (S.D. Fla. Oct. 30, 2014) (holding that conclusory allegation of willfulness is insufficient and ordering that plaintiffs' notice be "limited to employees who are not barred by FLSA's two-year statute of limitations").

[16] *See Dean W. Aviation, LLC*, No. 17-62282, 2018 WL 1083497, at *4 (S.D. Fla. Feb. 28, 2018) (holding that "courts often include the contact information for both plaintiff's counsel and defense counsel in the notice . . . in the interest of providing complete information to potential opt-in plaintiffs"); *Leo*, 2017 WL 477721, at *3 ("The Court also agrees that [defendant's] counsel's information should be included.").

Tel:  +1.305.415.3303
eFax:  +1.877.432.9652
eMail:  mark.zelek@morganlewis.com

Sari M. Alamuddin (pro hac vice)
77 W. Wacker Drive
Chicago, IL  60601
Tel:  +1.312.324.1000
Fax:  +1.312.324.1001
eMail:  sari.alamuddin@morganlewis.com

Sam S. Shaulson (pro hac vice)
MORGAN, LEWIS & BOCKIUS, LLP
101 Park Avenue
New York, NY 10178
Tel:  +1.212.309.6718
Fax:  +1.212.309.6001
eMail:  sam.shaulson@morganlewis.com

*Counsel for Defendant*
*JPMorgan Chase Bank, N.A.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of December, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Rowdy B. Meeks
ROWDY MEEKS LEGAL GROUP LLC
8201 Mission Rd., Suite 250
Prairie Village, KS  66208
rowdy.meeks@rmlegalgroup.com

Gregg Shavitz
SHAVITZ LAW GROUP, P.A.
951 Yamato Road, Suite 285
Boca Raton, Florida  33431
gshavitz@shavitzlaw.com

*s/ Mark E. Zelek*
Mark E. Zelek

26