UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

OPHELIA HAWKINS,
on behalf of herself and
all others similarly situated,

     Plaintiff,

v.                       Case No. 8:19-cv-2174-T-33AEP

JPMORGAN CHASE BANK, N.A.,

     Defendant.
_____/

**ORDER**

This matter is before the Court on consideration of Plaintiff's[1] Motion for FLSA Conditional Certification and Notice (Doc. # 75), filed on November 14, 2019. Defendant JPMorgan Chase Bank filed a response in opposition on December 16, 2019 (Doc. # 91) and Hawkins filed a reply on December

---

[1] The Motion for Conditional Certification was filed by then-named Plaintiff Dusty Leitzke. However, in light of the Court's Order granting Defendant's Motion to Compel Plaintiff Leitzke and others to arbitrate, and because this Court considers Ophelia Hawkins to have been a party-plaintiff ever since she filed her notice of consent to opt-in to this litigation (Doc. # 12), the Court will consider the Motion to be filed by Hawkins. See Mickles v. Country Club, Inc., 887 F.3d 1270, 1273 , 1278 (11th Cir. 2018) (holding that opt-in plaintiffs become party-plaintiffs upon the filing of their written consents and they remain party-plaintiffs "until the district court determines they are not similarly situated and dismisses them").

1

30, 2019. (Doc. # 96). Employing the lenient conditional certification standard and declining to review the merits of the underlying FLSA claims, the Court determines that a class of similarly situated employees would be interested in joining a collective action. Therefore, the Motion is granted as set forth herein.

I.   **Background**

On June 25, 2019, Plaintiff Dusty Leitzke initiated this action against Chase in the District Court for the Southern District of Ohio. (Doc. # 1). Six people subsequently filed consent forms indicating their desire to opt-in to this action: Duane Hudson, Eram Rashedi, Rebecca Massicotte, Cheryl Gordon, Colette Maxwell, and Ophelia Hawkins. (Doc. ## 5, 9, 12). On January 26, 2020, another individual, Jason Blodgett, filed his consent to opt-in to this litigation. (Doc. # 100).

In September 2019, the case was transferred to this Court. (Doc. ## 26, 27). Chase then filed a motion to compel Leitzke and five of the six opt-in Plaintiffs to arbitrate, which the Court granted. (Doc. ## 73, 101). However, because opt-in Plaintiff Hawkins was not subject to an arbitration agreement with Chase, the Court ordered her to file an amended

complaint with herself as the named plaintiff. Hawkins did so on February 3, 2020. (Doc. # 102).

According to the amended complaint, Hawkins works as an Investigator within Chase's fraud, compliance operations, and investigations (FCOI) division. (Doc. # 102 at 1, 2, 5). Hawkins alleges that she performs "computer data entry work while applying mandatory Chase policies, procedures, and guidelines to determine cases Chase assigns her." (Id. at 1, 6-7).

According to Hawkins, Chase violated the Fair Labor Standards Act (FLSA) by misclassifying her and other similarly situated employees as exempt from overtime pay. (Id. at 1-2, 9-10). She claims that other fraud Investigators employed by Chase nationwide have also been misclassified as exempt and, thus, overtime compensation was wrongly withheld from them. (Id. at 1, 8-9).

Accordingly, Hawkins seeks to bring a collective action on behalf of herself and all others similarly situated. (Id. at 2). According to the amended complaint, the similarly situated employees are:

> All persons who are, have been, or will be employed
> by Defendant as exempt classified "Investigators,"
> "Investigations Specialists," and other similar
> investigation employees in similar job titles in
> Chase's    Fraud    Compliance    Operations    and

3

Investigations ("FCOI") Division within the United States at any time during the last three years through the entry of judgment in this case ("FLSA Collective").

(Id. at 8).

## II.  Legal Standard

The FLSA expressly permits collective actions against employers accused of violating the FLSA's mandatory overtime provisions. See 29 U.S.C. § 216(b) ("An action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."). In prospective collective actions brought pursuant to Section 216(b), potential plaintiffs must affirmatively opt into the collective action. Id. ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.")

Pursuant to Section 216(b), certification of collective actions in FLSA cases is based on a theory of judicial economy by which "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged" activity. Hoffmann–La Roche, Inc. v. Sperling, 493 U.S. 165, 170 (1989).

4

In making collective action certification determinations under the FLSA, courts typically follow a two-tiered approach:

> The first determination is made at the so-called notice stage. At the notice stage, the district court makes a decision - usually based only on the pleadings and any affidavits which have been submitted - whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in conditional certification of a representative class. If the district court conditionally certifies the class, putative class members are given notice and the opportunity to opt in. The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for decertification by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question.

Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1218 (11th Cir. 2001)(internal citations and quotation marks omitted).

At the notice stage, the Court should initially determine whether there are other employees who desire to opt into the action and whether the employees who desire to opt in are similarly situated. Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1259 (11th Cir. 2008); Dybach v. State of Fla. Dep't of Corrs., 942 F.2d 1562, 1567–68 (11th Cir.

1991). This determination is made using a "fairly lenient standard." Hipp, 252 F.3d at 1218. The plaintiffs bear the burden of showing a reasonable basis for the claim that there are other similarly situated employees and must offer "detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." Morgan, 551 F.3d at 1261 (internal citations omitted). Essentially, at this stage of the proceedings, the Court must determine whether there are other Chase FCOI Investigators who are similarly situated and desire to opt in. Dybach, 942 F.2d at 1567-68.

## III. **Analysis**

### A.   **Whether other employees desire to opt-in**

First, the Court must "satisfy itself that there are other employees . . . who desire to 'opt-in.'" Dybach, 942 F.2d at 1567-68. The onus is on the plaintiff to demonstrate a reasonable basis for the assertion that other employees desire to opt-in. Leo v. Sarasota Cty. Sch. Bd., No. 8:16-cv-3190-T-30TGW, 2017 WL 477721, at *2 (M.D. Fla. Feb. 6, 2017). "Evidence of similarly situated employees who desire to opt in may be based on affidavits of other employees, consents to join the lawsuit filed by other employees, or expert evidence on the existence of other similarly situated

employees." Hart v. JPMorgan Chase Bank, N.A., No. 8:12-cv-470-T-27TBM, 2012 WL 6196035, at *4 (M.D. Fla. Dec. 12, 2012).

Here, Hawkins has met her light burden to establish a reasonable basis that other employees desire to opt-in to this action. There are at least six other individuals who would have been interested in joining a collective action absent their arbitration agreements. The Court considers the affidavits of former Plaintiffs Leitzke, Gordon, Maxwell, Hudson, Rashedi, and Massicotte as "affidavits of other employees" whose averments regarding their desire to join in the litigation, their job requirements, and their pay provisions are wholly separate from the issue of whether those employees signed binding arbitration agreements. In addition, Hawkins has also submitted the opt-in consent of Jason Blodgett, who worked at Chase's Jacksonville, Florida office.[2] (Doc. # 100).

This Court is mindful that "there is no magic number requirement for the notice stage," and that courts will conditionally certify FLSA collectives even with relatively few plaintiffs present at this stage of the litigation. Ciani v. Talk of the Town Rests., Inc., No. 8:14-cv-2197-T-33AEP,

---

[2] Chase represents that Blodgett is also subject to an arbitration agreement. (Doc. # 103).

2015 WL 226013, at *2 (M.D. Fla. Jan. 16, 2015); <u>see also</u> <u>Brooks v. A. Rainaldi Plumbing, Inc.</u>, No. 6:06-cv-631-Orl-31DAB, 2006 WL 3544737, at *2 (M.D. Fla. Dec. 8, 2006) (noting that even one opt-in notice can be sufficient to meet the first requirement for conditional certification). In light of the circumstances present in this case, Hawkins has established a reasonable basis that there other FCOI Investigators who would desire to opt into the action.

### B.   <u>Whether the employees are similarly situated</u>

As explained by the Eleventh Circuit, a plaintiff's burden of showing a "reasonable basis" for the claim that similarly situated employees seek to join the action is "not particularly stringent, fairly lenient, flexible, not heavy, and less stringent than that for joinder under Rule 20(a) or for separate trials under 42(b)." <u>Morgan</u>, 551 F.3d at 1260-61 (internal citations omitted). Nonetheless, there must be more than "only counsel's unsupported assertions that FLSA violations [are] widespread and that additional plaintiffs" would come forward. <u>Id.</u> at 1261. For purposes of defining the "similarly situated class" under Section 216(b), the plaintiffs must show that the employees are similarly situated with respect to their job requirements and pay provisions. <u>Id.</u> at 1259 (citing <u>Dybach</u>, 942 F.2d at 1567-68).

As to the pay provisions, Hawkins here points out that Chase has admitted in its answer that "it currently treats those with the job title Investigator in FCOI . . . as exempt employees not eligible for overtime, and pays them on a salary basis" and that "during the past three years, individuals with the job title Investigator in FCOI were exempt and paid on a salary basis." (Doc. # 17 at 4). The affidavits submitted by Hawkins support this admission. All of the affidavits state that Chase classifies the declarant as exempt from overtime pay during their work as an Investigator, that the employee regularly works more than 40 hours per week, that Chase pays Investigators according to a similar salary-based compensation system, and that Chase did not pay them for overtime hours they worked in excess of 40 hours per week. See, e.g., (Doc. # 75-2). Here, Hawkins has met her modest burden of showing that FCOI Investigators are similarly situated with regard to their pay provisions.

The crux of the dispute here, however, is whether these Chase FCOI Investigators are similarly situated with respect to their job requirements. In the affidavits submitted in support of Hawkins's Motion, the employees state that their "primary duty is to perform computer-based production work which consists of [the employees] applying detailed written

Chase guidelines to individual banking cases." See, e.g., (Doc. # 75-2 at 2). To do this, Chase assigns Investigators "cases" through a computer-based queue. (Id. at 3). Once the Investigator receives the case, they review it and apply any applicable written guidelines to that case. (Id.). These written guidelines from Chase "dictate" and "control" the Investigator's recommendation as to whether Chase should file a Suspicious Activity Report (SAR) on the case. (Id.). According to the affidavits, Investigators do not perform work which requires the exercise of discretion or judgment with respect to matters of significance to Chase. (Id.).

The affidavits aver that all Investigators perform the same or similar primary duties. (Id. at 3). In support, the affidavits point to (1) personal interaction with other Investigators; (2) the "Chase FCIP computer system" that all Investigators use to "input data and perform their jobs," along with conference calls with Chase Investigators in other offices in which they discuss "common policies and procedures, and the common work Investigators perform"; (3) emails from other Investigators that discuss common policies and procedures and Chase's written guidelines; (4) contact with Investigators from other offices and communication about the written guidelines; (5) the fact that Investigators

10

across offices all receive the same training; and (6) all Investigators are under common management. (Id. at 3-5).

In addition to the affidavits, Hawkins also submitted a document purportedly showing Investigator production goals and a "scorecard," along with Investigator job descriptions.[3] (Doc. ## 75-8, 75-9).

Chase vehemently denies that FCOI Investigators are similarly situated with respect to their job requirements, and it attaches numerous declarations from other current FCOI Investigators in support of that assertion. In relevant part, these defense declarations state that FCOI investigators handle numerous types of fraud cases, have "broad discretion" in determining whether certain cases are suspicious, and have "complete decision-making responsibility as to whether to file a SAR." See, e.g., (Doc. ## 91-1, 91-16). Many of the declarations provided by Chase also state that the role of "Investigator" is far more than simply data entry; the

_____

[3] Chase takes issue with the "unauthenticated job postings" submitted by Hawkins, arguing that there are actually at least five different job descriptions for FCOI Investigators and that one of the job descriptions submitted by Hawkins predates the statute of limitations period. (Doc. # 91 at 17). Because the Court considers the affidavits offered by Hawkins sufficient to meet the relatively low threshold at play in this stage of the proceedings, the Court need not consider the job postings.

employees aver that they exercise independent judgment, perform in-depth research, and "rarely refer to the written job aids and guidelines." See, e.g., (Doc. ## 91-12, 91-14, 91-15).

The defense declarations also reflect that FCOI Investigators fill many different roles and functions, for example, investigating suspicious activities involving credit cards, reviewing subpoena requests, investigating fraud in auto loan applications, reviewing other Investigators' case notes and documentation, or even forecasting workloads for other Investigators. (Doc. ## 91-1, 91-2, 91-3, 91-5, 91-6, 91-7, 91-9).

Chase also points to statements made by Hawkins in her resume that, as an associate fraud investigator, she has the ability to "make decisions and independent judgment calls autonomously," makes "critical regulatory reporting decisions," gathers evidence, and is "responsible for analyzing individual cases for closure or referral to other units." (Doc. # 95-11 at 5).

Here, based on the pleadings and submitted affidavits, the Court finds that Hawkins has reasonably made the necessary showing that there are other FCOI Investigators who are similarly situated and desire to opt in. Hawkins has presented

affidavits from herself and six other Chase FCOI
Investigators who aver that they have the same primary
computer-data-entry duties, that other Investigators also
engage in these primary duties and are subject to the same
written guidelines, and that various other Investigators are
dissatisfied with Chase's failure to pay them overtime wages.

The evidence offered by Chase exceeds the Court's
limited inquiry at this notice stage of the conditional
certification process. Ciani, 2015 WL 226013, at *3-4; see
also Simpkins v. Pulte Home Corp., No. 6:08-cv-130-Orl-19DAB,
2008 WL 3927275, at *14-15 (M.D. Fla. Aug. 21, 2008) (noting
that the "mass of evidence" presented by defendant in
opposition to conditional certification, including evidence
about the purported collective members' varying types of work
projects, varying amounts of discretion, and flexible hours,
"goes far beyond the scope of this Court's review at the first
stage of the certification process"). Therefore, while this
Court has considered Chase's declarations, it is not
convinced by them. See Creely v. HCR Manorcare, Inc., 789 F.
Supp. 2d 819, 839 (N.D. Ohio 2011) ("[T]his Court is not
swayed by [defendant's] submission of thirty-five 'happy
camper' affidavits . . . . [T]he Court's function at this
stage of conditional certification is not to perform a

detailed review of individual facts from employees hand-picked by [defendant]. Those questions of breadth and manageability of the class are left until the second stage analysis following the receipt of forms from all opt-in plaintiffs.").

Some of the information provided by Chase – such as whether Investigators use independent judgment or rely on Chase's written guidelines in performing their job functions – sets up a credibility dispute on an issue that is at the core of this FLSA misclassification case. Such determinations are premature at this juncture. See Roberson v. Rest. Delivery Developers, LLC, No. 8:17-cv-769-T-33MAP, 2017 WL 4124862, at *3 (M.D. Fla. Sept. 18, 2017) ("[A]t the conditional certification stage, the Court must not review the merits of the case."); see also Barrus v. Dick's Sporting Goods, Inc., 465 F. Supp. 2d 224, 230 (W.D.N.Y. 2006) ("It is not the Court's role to resolve factual disputes, decide substantive issues going to the ultimate merits or make credibility determinations at the preliminary certification stage of an FLSA collective action.").

Chase contends that it is not "asking the Court to resolve conflicting testimony or make any determination on the merits" at this stage. (Doc. # 91 at 14). But it

nevertheless argues that conditional certification is inappropriate because determining whether the putative class members are similarly situated would require the Court to engage in an individualized, fact-intensive inquiry. (Id.). To this end, Chase makes much of the fact that its employee declarations show that Investigators perform many different job functions beyond mere computer data entry.

This Court was faced with a similar argument in Lytle v. Lowe's Home Centers, Inc., No. 8:12-cv-1848-T-33TBM, 2014 WL 103463, at *4 (M.D. Fla. Jan. 10, 2014). This Court rejected that argument, finding that the defendant's arguments were premature at this conditional certification stage. Id. at *5. This Court follows the reasoning of Lytle and finds that such evidence is more appropriately considered at the second stage of the conditional certification analysis, once discovery is largely complete. See Vondriska v. Premier Mortg. Funding, Inc., 564 F. Supp. 2d 1330, 1335 (M.D. Fla. 2007) ("Variations in specific job duties, job locations, working hours, or the availability of various defenses are examples of factual issues that are not considered at the notice stage."); Ciani, 2015 WL 226013, at *4 (certifying class in spite of employer affidavits "pinpointing variations in individual titles, schedules, and practices"); Palma v.

MetroPCS Wireless, Inc., No. 8:13-cv-698-T-33MAP, 2014 WL
235478, at *1 (M.D. Fla. Jan. 22, 2014) (same); see also
Morgan, 551 F.3d at 1261-62 (explaining that the various
defenses available to defendants that appear to be individual
as to each plaintiff should be addressed at the second stage
of conditional certification).

Thus, to the extent Chase tenders competing
declarations, the Court declines to engage in a credibility
analysis. The Court finds that Hawkins has met her fairly
lenient burden at this stage of showing that there are
similarly situated FCOI Investigators who wish to opt into
this litigation.

### C.   Proposed Limitations on Scope of the Collective

Hawkins has attached a proposed notice to be sent out to
putative members of the collective action. (Doc. # 75-10).
Hawkins proposes to send the notice to members of the FLSA
collective who have worked for Chase in the three years prior
to the date of this Order. (Doc. # 75 at 17). She seeks to
send the notice via U.S. mail and employees' work and personal
email addresses, allowing the employees 60 days to opt in.
(Id. at 17-18).

Court-authorized notice in a class action context helps
to prevent "misleading communications" and ensures that the

notice is "timely, accurate, and informative." <u>Hoffmann-La Roche, Inc. v. Sperling</u>, 493 U.S. 165, 171 (1989). "[T]he notice to the class should not appear to be weighted in favor of one side or the other." <u>Palma</u>, 2014 WL 235478, at *1. "[I]n exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." <u>Hoffmann-La Roche</u>, 493 U.S. at 174.

Chase objects to the scope of the proposed collective action. First, Chase argues that, because all of the employees (save Blodgett) work at Chase's Tampa, Florida, office, the proposed collective should be limited to those employees in Tampa. (Doc. # 91 at 20-21).

Hawkins alleges in her amended complaint that Chase is a national banking association and a leader in the financial-services industry. (Doc. # 102 at 4). Moreover, the affidavits in support of the Motion state that these employees routinely communicate with Investigators in other offices about "common policies and procedures," participate in training with Investigators from other offices, and have common management. <u>See</u>, <u>e.g.</u>, (Doc. # 75-2 at 3-5). Thus, based on the allegations and affidavits submitted to the Court, the Court

finds that conditional certification of a nationwide class is appropriate. See Roberson v. Rest. Delivery Developers, LLC, Case No. 8:17-cv-769-T-33SPF, Docket Nos. 23, 46 (granting plaintiff's motion for conditional certification and authorizing nationwide notice despite the fact that named plaintiff worked only in Tampa).

Second, Chase argues that any certified class should exclude employees with binding arbitration agreements. (Doc. # 91 at 21). In support, Chase relies on a recent case out of the Fifth Circuit, In re JPMorgan Chase & Co., 916 F.3d 494, 502 (5th Cir. 2019). In that case, the Fifth Circuit recognized that "[f]ederal district courts have splintered over [the issue of sending notice of a collective action to employees bound by arbitration agreements], and no court of appeals has weighed in." In re JPMorgan, 916 F.3d at 499-500. As the first court of appeals to do so, the Fifth Circuit held that district courts may not send notice to employees with valid arbitration agreements "unless the record shows that nothing in the agreement would prohibit that employee from participating in the collective action." Id. at 501. Of note, at least one named plaintiff was subject to a binding arbitration agreement and the plaintiffs "did not intend to contest the validity or enforceability of the agreements."

Id. at 498. The Fifth Circuit reasoned that giving notice to those individuals who cannot ultimately participate in the collective action undermines the very purpose of collective actions – the efficient resolution in one proceeding of common issues. Id. at 502 (quoting Hoffmann–La Roche, 493 U.S. at 170, 172-73).

Two district courts within the Eleventh Circuit have addressed the issue in the months after In re JPMorgan, and both have adopted the Fifth Circuit's approach. See McGuire v. Intelident Sols., LLC, 385 F. Supp. 3d 1261, 1265-66 (M.D. Fla. 2019) (relying on In re JPMorgan to hold that employees subject to valid arbitration agreements should be excluded from an FLSA collective action at the notice stage); see also Compere v. Nusret Miami, LLC, 391 F. Supp. 3d 1197, 1205 (S.D. Fla. 2019) (determining that potential plaintiffs who have signed arbitration agreements should not receive notice pursuant to In re JPMorgan).

Just last month, the Seventh Circuit also weighed in, concluding that district courts "may not authorize notice to individuals whom the court has been shown entered mutual arbitration agreements waiving their right to join the action. And the court must give the defendant an opportunity to make that showing." Bigger v. Facebook,Inc., No. 19-1944,

2020 WL 401804, at *4 (7th Cir. Jan. 24, 2020). Thus, the Seventh Circuit set out a framework for district courts to follow. First, courts must determine whether a plaintiff contests the defendant's assertions about the existence of valid arbitration agreements. Id. If no plaintiff contests those assertions, then the court may not authorize notice to the employees whom the defendant alleges entered valid arbitration agreements. Id. If, however, a plaintiff *does* contest the defendant's assertions, then the district court, before authorizing notice, must permit the parties to submit additional evidence on the agreements' existence and validity, with the employer bearing the burden to show, by a preponderance of the evidence, the existence of a valid arbitration agreement for each employee it seeks to exclude from receiving notice. Id. A court may not authorize notice to any employee whom the employer shows entered into a valid arbitration agreement, unless the record reveals that nothing in the agreement would prohibit the employee from participating in the action. Id.

Looking to this persuasive authority in the absence of any controlling Eleventh Circuit case law, the Court notes, first, that Chase has submitted the arbitration agreements of six former Plaintiffs in this action and a declaration from

20

a Chase human resources employee that approximately 80% of
the individuals employed as Investigators or Senior
Investigators at the Tampa office signed such arbitration
agreements. (Doc. ## 73-1, 91-4). The existence of the
arbitration agreements is therefore not in dispute. The Court
notes, second, that Plaintiff did not argue *at all* in her
opposition to Chase's motion to compel arbitration that the
arbitration agreements were invalid or unenforceable, instead
relying on a waiver argument. See (Doc. # 79). The Court
believes that, under these circumstances, it would be well
within its rights to consider the validity and enforceability
of the arbitration agreements to be unopposed. See In re
JPMorgan, 916 F.3d at 498 (holding that district court erred
in ordering notice be sent to employees who signed valid
arbitration agreements where plaintiffs did not dispute the
validity or enforceability of those agreements).

However, the Court acknowledges that, in her reply in
support of the conditional certification Motion, Plaintiff
raised a single argument attacking the validity of the
arbitration agreements — that the arbitration agreements are
unenforceable because Section 9 of the agreements renders
them illusory. Section 9 of the agreements provides as
follows:

21

> **AMENDMENT OR TERMINATION OF AGREEMENT.** JPMorgan Chase reserves the right to amend, modify or discontinue this Agreement at any time in its sole discretion to the extent permitted by applicable law. Such amendments may be made by publishing them on the JPMorgan Chase Intranet or by separate notification to [the employee] and shall be effective 30 calendar days after such amendments are provided to me and will apply on a going-forward basis only. Amendment, modification or discontinuation of the Agreement will not affect pending arbitration proceedings. Continuation of my employment after receiving such amendments or modifications will be considered my acceptance of the amended terms.

See, e.g., (Doc. # 73-1 at 12). Plaintiff argues that the language giving Chase the right to amend or modify the arbitration agreements "in its sole discretion" renders the agreements illusory. (Doc. # 96 at 5-6).

The Court disagrees. The agreements state that employees must be given notice of any amendments or modifications (through publication on the company's Intranet or through direct notification) and that the employee can evince their consent to the amendments or modifications through their continued employment. The Third Circuit has upheld a very similar provision within an employee handbook. See Blair v. Scott Specialty Gases, 283 F.3d 595, 604 (3d Cir. 2002) (finding modification provision in arbitration agreement not illusory where employer retained right to alter the agreement only after putting the change in writing, providing a copy to

the employees, and allowing the employees to accept the change by continuing employment). It is also similar to a provision within a dispute resolution policy (DRP) agreement that the Eleventh Circuit found to be a valid offer and not illusory. See Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1374 (11th Cir. 2005) (holding that agreement was a valid offer where the DRP allowed one party to modify the DRP only upon notice to the other party); see also Larsen v. Citibank FSB, 871 F.3d 1295, 1320-21 (11th Cir. 2017) (upholding arbitration provision within banking contract where the contract "specifically obligates [the bank] to provide consumers with notice prior to making any amendment," and where state law mandated that this duty was accompanied by an implied duty of good faith and fair dealing, the bank's power to amend the provision "is therefore not unfettered, unlimited, or absolute").

Accordingly, the Court finds that Chase has demonstrated by a preponderance of the evidence that the arbitration agreements at issue in this case are valid and enforceable. See Bigger, 2020 WL 401804, at *4; In re JPMorgan, 916 F.3d at 502-03.

Under these circumstances, the Court agrees with the Fifth Circuit and its sister courts within this Circuit that

employees who signed a binding arbitration agreement are not "potential plaintiffs" and that sending notice to individuals who cannot participate in the action fails to serve the purpose undergirding FLSA collective actions. See McGuire, 385 F. Supp. 3d at 1265-66; see also Bigger, 2020 WL 401804, at *4 (explaining that sending notice to employees who signed valid arbitration agreements "may at least appear to predominantly inflate settlement pressure instead of inform employees of an action in which they can resolve common issues. Also, in that situation, the risk is high that the notice will appear to facilitate abuse of the collective-action device and thus place a judicial thumb on the plaintiff's side of the case."). Thus, the Court will not authorize notice to any employee who entered into the binding arbitration agreement that has been considered by this Court.

Third, Chase argues that notice should not go to Investigations Specialists, who are classified as non-exempt employees. However, the Court notes that in Hawkins's proposed definition of the FLSA collective, such definition only includes individuals "employed by [Chase] **as exempt classified** "Investigators," "Investigations Specialists," and other similar investigation employees in similar job

titles[.]" (Doc. # 102 at 8 (emphasis added)). Thus, any non-exempt employees necessarily fall outside of this definition.

Accordingly, the Court restricts the scope of the proposed FLSA Collective as follows:

> All persons who are, have been, or will be employed by Defendant as exempt classified "Investigators," "Investigations Specialists," and other similar investigation employees in similar job titles in Chase's Fraud Compliance Operations and Investigations ("FCOI") Division within the United States at any time during the last three years through the entry of judgment in this case and who did not sign a valid and enforceable arbitration agreement.

**D.   <u>Proposed Notice</u>**

Chase takes issue with the following aspects of Hawkins's proposed notice:

(1)   notice via both work and personal email;

(2)   request for reminder notices;

(3)   failure to advise the recipients of the full extent of their potential involvement in this lawsuit, including possible travel to the Middle District of Florida to testify;

(4)   the absence of a requirement for a neutral third-party administrator;

(5)   Hawkins's request for a three-year time span; and

(6)   failure to include contact information for defense counsel.

(Doc. # 91 at 23-24).

The Court will allow Hawkins to send notice to the personal and work email addresses of potential opt-in plaintiffs. The Court is mindful that certain potential opt-in plaintiffs might have left their employment with Chase but still fall within the applicable statute of limitations.

The Court does not approve the sending of follow-up or reminder communications to potential opt-in plaintiffs. See Roberson, 2017 WL 4124862, at *4; see also Palma, 2014 WL 235478, at *3 ("[T]he Court determines that it is not necessary to send any class members 'reminder post cards.' Sending a putative class member notice of this action is informative; sending them a 'reminder' is redundant.").

The Court also agrees that the proposed notice fails to advise recipients of the full extent of their potential involvement in the case. For example, it does not inform recipients that (1) if they opt in, they might have to appear for trial; or (2) that Chase could try to recover its costs from potential class members if the Plaintiff's lawsuit is unsuccessful. See Ciani, 2015 WL 226013, at *5.

The Court will allow a three-year period for the FLSA claims because, at this juncture, Hawkins has alleged that Chase's violation was willful. (Doc. # 102 at 3, 8, 10);

Roberson, 2017 WL 4124862, at *4 (allowing a three-year period in the Court-authorized notice given plaintiff's allegation that defendant willfully violated the FLSA).

The parties are directed to meet and confer with respect to any remaining objections to certain provisions of the notice (to the extent not already addressed by the Court). After consulting with defense counsel, Plaintiff's counsel shall file a motion for approval of the revised proposed notice within 14 days of the date of this Order, noting any objections to the proposed notice which have not been resolved by the parties. The Court will toll the FLSA statute of limitations during this 14-day period to avoid prejudice to the rights of the putative collective action members.

In order to facilitate notice, Chase is directed to produce in an electronic or computer-readable format the full name, address(es), email address(es) (including personal email addresses to the extent available), and dates of employment for each potential opt-in plaintiff within 14 days of the date of this Order.

Accordingly, it is now

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Plaintiff's Motion for FLSA Conditional Certification and Notice (Doc. # 75) is **GRANTED.**

(2)   Defendant is directed to produce to Plaintiff, within 14 days of the date of this Order, the information concerning potential opt-in plaintiffs as described herein.

(3)   The parties are directed to meet and confer with respect to any remaining objections to certain provisions of the notice (to the extent not already addressed by the Court). After consulting with defense counsel, Plaintiff's counsel shall file a motion for approval of the revised proposed notice within 14 days of the date of this Order, noting any objections to the proposed notice which have not been resolved by the parties.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 5th day of February, 2020.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE