# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**OPHELIA HAWKINS,**
On Behalf of Herself and All Others
Similarly Situated,

      Plaintiff,

vs.                           Case no.: 8:19-cv-02174-VMC-AEP

**JPMORGAN CHASE BANK, N.A.**

Defendant.

_____/

## JOINT MOTION FOR FINAL APPROVAL
## OF CLASS AND COLLECTIVE ACTION SETTLEMENT

Plaintiff, Ophelia Hawkins ("Plaintiff" or "Hawkins"), on behalf of herself and all similarly situated others, and Defendant, JPMorgan Chase Bank, N.A. ("Defendant"), file this Joint Motion (the "Motion") which seeks an Order which grants Final Approval of the Settlement Agreement ("Settlement") between Plaintiff, the putative class, and Defendant. The Parties respectfully submit the following Memorandum in support of this Motion.

The Court preliminarily approved the Settlement on August 4, 2020. ECF No. 132. Nothing has changed to alter this finding. Notice has since been mailed and emailed to 92 Class/Collective Members. No Class/Collective Member opted out of the settlement. Only one Class/Collective Member objected to the settlement because he disagrees with the "entirety of the lawsuit" as "frivolous" and believes "the position is not mis-classified." This sole objection is factually and legally deficient. This Court should thus grant Final Approval of the Settlement given its reasonableness, fairness, and adequacy as this Court previously found, and the Class's overall favorable settlement reaction. The Parties have submitted a Proposed Order with this Motion.

1

## I.  **BACKGROUND AND OVERVIEW**

In this Litigation[1], Plaintiff alleges, among other things, that Defendant violated the FLSA and state wage and hour laws by misclassifying Plaintiff and the Class/Collective Members as exempt from the applicable overtime requirements, and thus not paying them overtime premiums. Defendant employed Plaintiff and the Class/Collective Members as exempt-designated FCOI Investigators and Senior Investigators.

This Litigation has been both comprehensive and contentious. The Parties have vigorously advanced their respective positions since this case was filed.  Settlement negotiations were likewise hard fought.  The Parties initially mediated this case with court-appointed mediator, Peter J. Grilli, on October 21, 2019.  The Parties' mediation resulted in an impasse notwithstanding Mr. Grilli's assistance. *See* ECF nos. 59-60, 62.

After the unsuccessful mediation, Plaintiff continued to fiercely litigate this case and to advocate her positions which included opposing Defendant's motion to compel arbitration, moving for and obtaining nationwide FLSA conditional certification as to those who did not sign arbitration agreements, and obtaining leave to amend the operative Complaint to substitute current Named Plaintiff Ophelia Hawkins to continue to pursue the case.  See ECF Nos. 73, 75, 79, 81, 90-91, 96, 99, 101-04. Plaintiff also successfully opposed further pre-certification discovery by Defendant. ECF No. 82.

The Parties again began discussing settlement as Plaintiff readied to send out FLSA notice. On March 6, 2020, this Court granted in part the Parties' Joint Motion to mediate again with Mr. Grilli.  ECF No. 116.  On April 8, 2020, the Parties conducted their second mediation.  The Parties finally reached a settlement with Mr. Grilli's assistance at the conclusion of the day long

---

[1] The Parties attached the Settlement Agreement as Exhibit A to their Preliminary Approval Motion (ECF No. 131-1).  The Agreement defines the capitalized terms in this Motion.

mediation.  ECF No. 126.  In the ensuing weeks, Counsel for Plaintiff and Defendant held multiple telephone conferences, and exchanged emails and multiple red-line drafts regarding the provisions of a binding settlement agreement, which ultimately resulted in the Parties' heavily negotiated and arm's length Settlement which fully resolves this case.

The Settlement cornerstone is the immediate, substantial, and concrete monetary relief it provides to the Class/Collective Members. As set forth in the Agreement, the Settlement creates a $495,000 Settlement Fund, which will be paid based upon applicable weeks worked on a claims made basis to all Class/Collective Members who submit a valid Claim Form. The settlement administration costs, amounts awarded by the Court for attorneys' fees and expenses, all payroll taxes and Plaintiff's enhancement award will be deducted from the Settlement Fund prior to payments to the Class/Collective Members.  The Settlement also provides that the best practicable notice be provided to Class/Collective Members by mail and email, and calls for the designation of Settlement Services, Inc., a reputable and competent professional Settlement Administrator.

On July 22, 2020, the Parties filed their Joint Motion for Preliminary Approval.  ECF No. 131. This Court granted preliminary approval on August 4, 2020.  ECF No. 132.  The Court scheduled the Final Fairness Hearing for November 13, 2020 at 9:00 AM Eastern time.  ECF No. 135.

The Settlement meets the Rule 23(e) and Eleventh Circuit standards for final approval given the extensive monetary relief to be provided by the Settlement Agreement which experienced counsel reached with Mr. Grilli after much litigation.  The Parties thus respectfully move the Court to finally approve the Settlement and to dismiss this case.

## II.    FACTUAL OVERVIEW AND LITIGATION HISTORY

The docket reflects that the Parties zealously and comprehensively pursued their opposing positions.  On June 25, 2019, then Named Plaintiff Dusty Leitzke filed a putative nationwide FLSA

collective action lawsuit in the Southern District of Ohio. ECF No. 1. The Complaint's material allegations centered on Defendant misclassifying Plaintiff and other like Investigators as exempt employees. Specifically, Plaintiff asserted that Defendant owed Plaintiff and other Investigators nationwide overtime premiums because they performed non-exempt, hourly work and Defendant subjected them to daily production goals. Defendant wholly denies these assertions.

In response to the Complaint, Defendant sent Plaintiff arbitration agreements for Plaintiff Leitzke and the other then Opt-Ins except for Hawkins. Next, on August 19, 2019, Defendant filed a motion to transfer venue and answered the Complaint denying all of Plaintiff's material allegations. ECF Nos. 16-17. The Parties continued to discuss the arbitration agreements and proper venue for the case. Ultimately, on September 3, 2019, Plaintiff agreed to transfer venue to Florida and the Parties filed a joint stay motion regarding the proceeding in Ohio. ECF Nos. 24-25.

This Court subsequently received this case on September 5, 2019. ECF No. 28. On September 17, 2019, this Court entered a Scheduling Order which required the Parties to exchange certain information and mediate. ECF No. 30. Court appointed mediator Mark Hanley had a conflict so this Court appointed Peter Grilli as mediator. ECF Nos. 31-32. The Parties repeatedly conferred with Mr. Grilli and agreed to mediate on October 21, 2019. ECF No. 45.

On September 30, 2019, this Court revised its Scheduling Order to move up certain information exchange deadlines. ECF No. 46. Next, on October 14, 2019, Plaintiff Leitzke and the then Opt-Ins filed their Answers to the Court Ordered Interrogatories and produced the required documents to Defendant. ECF Nos. 50-57. On October 17, Defendant produced its verified summary of hours worked by Plaintiff Leitzke and the Opt-Ins, and supporting documents. ECF. No. 58.

On October 21, 2019, both Parties and their counsel appeared for mediation with Mr. Grilli in Tampa. This required the Parties' counsel and Defendant's company representatives to fly to Tampa for mediation. Despite their best efforts, the Parties could not settle this case during that mediation. ECF Nos. 59-62. The Parties immediately began working on the Case Management Report and respective statements of the issues. ECF Nos. 64-66.

On October 21, 2019, this Court ordered the Parties to appear before this Court on October 25, 2019 for a case management hearing. ECF No. 61.

On October 25, 2019, the Parties participated in the case management hearing. ECF No. 70. The Court extensively discussed with the Parties the case schedule including fact discovery, motion briefing, and trial. This Court entered its Scheduling Order and Order regarding Summary Judgment based upon the Court's discussions during this hearing. ECF Nos. 71-72.

Following the hearing, Defendant submitted its motion to compel arbitration on November 4, 2019. ECF No. 73. Defendant argued that Plaintiff Leitzke and all Opt-Ins but Hawkins had signed valid and enforceable arbitration agreements. Thus, Defendant requested this Court dismiss this case and refer them to individual arbitrations. *Id.*

On November 14, 2019, Plaintiff filed her motion for nationwide FLSA conditional certification and notice. ECF No. 75. Plaintiff argued that this Court should authorize nationwide FLSA notice because all Investigators were similarly situated in that they performed similar job duties, and Defendant classified them as exempt and paid them a salary. *Id.*

Soon thereafter, on November 22, 2019, Defendant filed its motion to compel Hawkins' deposition and/or extend Defendant's response date to Plaintiff's FLSA conditional certification motion. ECF No. 78. Defendant argued that it needed to depose Hawkins before Defendant responded to Plaintiff's Motion. *Id.*

On December 4, 2019, Plaintiff filed her opposition to Defendant's motion to compel arbitration. ECF No. 79. Plaintiff contended that Defendant had waived any arbitration agreement by delaying the motion. Plaintiff also sought leave to substitute Hawkins as the Named Plaintiff if this Court granted Defendant's motion. *Id.*

On December 5, 2019, this Court directed Defendant to file a reply brief supporting its motion to compel arbitration to which Defendant complied. ECF Nos. 80, 90. Defendant continued to argue that its arbitration agreements were valid, and this Court should dismiss this case.

On December 6, 2019, Plaintiff submitted her opposition to Defendant's motion to compel Hawkins' deposition. ECF No. 81. Plaintiff argued that the Parties had agreed no further discovery would occur before the Court ruled on FLSA conditional certification and any deposition of Hawkins was unnecessary for this Court's ruling. *Id.* On December 9, 2019, this Court denied Defendant's motion to compel Hawkins deposition. ECF No. 82.

On December 16, 2019, Defendant filed its opposition to Plaintiff's FLSA conditional certification motion. ECF No. 91. Defendant's opposition included 17 exhibits and contained numerous affidavits from Investigators who said that they performed different duties than those described by the Plaintiff and opt-ins, their job required independent discretion and judgment, and that they worked little to no overtime because their job did not require it. Defendant argued that Plaintiff failed to meet the standard for nationwide conditional certification because many FCOI Investigators exercised independent judgment and discretion in the performance of their duties and worked little to no overtime. *Id.*

On December 17, 2020, this Court ordered Plaintiff to file a reply in support of her FLSA conditional certification motion, which Plaintiff did. ECF Nos. 92, 96. Plaintiff again contended that FCOI investigators performed similar jobs with similar pay so certification was appropriate.

On January 2, 2020, Defendant moved to file a four page sur-reply brief to further oppose Plaintiff's conditional certification motion.  ECF No. 97.  This Court granted Defendant's motion and Defendant then filed its sur-reply.  ECF Nos. 98-99.

On January 27, 2020, this Court granted Defendant's motion to compel arbitration.  ECF No. 101.  The Court ruled that Plaintiff Leitzke and five Opt-Ins should proceed in arbitration.  This Court also granted Plaintiff leave to substitute Hawkins as the lead plaintiff so she could continue this Litigation.  *Id.*  Plaintiff subsequently filed her Amended Complaint on February 3, 2020.  ECF No. 102.  On February 18, 2020, Defendant answered the Amended Complaint, and again denied all of Plaintiff's claims and legal theories.  ECF No. 107.

On February 5, 2020, this Court granted Plaintiff's motion for nationwide FLSA conditional certification limited to those FCOI Investigators who were not bound by arbitration agreements (based on the lenient first-stage standard) and ordered Plaintiff to send notice to the FLSA collective.  ECF No. 104.  The Court also directed the Parties to meet and confer about the FLSA notice and a revised case management report.  ECF Nos. 104-05.  The Parties repeatedly discussed and jointly agreed on the notice and report, and filed both with the Court.  ECF Nos. 108-09.  The Court approved the Parties' notice.  ECF No. 110.  Later, the Court issued its Second Case Management and Scheduling Order which set discovery and motion deadlines, and pre-trial scheduling dates.  ECF No. 111.

On March 2, 2020, this Court ordered the Parties to mediate again with Mr. Grilli.  ECF No. 112.  During this time, the Parties also had direct communication as part of their obligations under Rule 26 about resolving this case.  The Parties' discussions eventually led to them agreeing to formally stay the case before sending out FLSA notice and mediate with Mr. Grilli on April 8th.  The Parties then filed a joint stay motion which this Court granted in part.  ECF Nos. 115-16.

During this time, Plaintiff filed opt-in consents for those FCOI Investigators who chose to join the case. ECF Nos. 106, 113-14, 117-18, 121-22. Defendant served written discovery on Hawkins and two other opt-ins to which they began responding.

On April 8, 2020, the Parties mediated again with Mr. Grilli. The Parties finally agreed to a settlement term sheet at the end of the full day mediation. ECF No. 126. Since that time, the Parties have exhaustively negotiated the terms and language of a detailed, written settlement agreement to which the Parties have ultimately agreed.

On July 22, 2020, the Parties filed the Joint Motion for Preliminary Settlement Approval. ECF No. 131. On August 4, 2020, this Court granted the Parties' Preliminary Approval Motion. ECF No. 132. This Court found that the Parties' Settlement "falls within the range of reasonableness," and meets the requirements of Rules 23(a), 23(b)(3), and 23(e). *Id.*

Defendant has and continues to deny that it committed any wrongdoing, wrongful act, or violation of law as alleged in this Litigation, and has vowed to both defend this Litigation and to seek decertification of the FLSA collective. Nonetheless, taking into account the uncertainty and risks inherent in any litigation, Defendant has concluded it is desirable and beneficial that the Litigation be fully and finally settled, and terminated in the manner and upon the terms and conditions set forth in the Settlement Agreement. Plaintiff believes that the claims asserted in the Litigation against Defendant have merit and that she would have prevailed on decertification, and at summary judgment and/or trial. Nonetheless, Plaintiff and Class Counsel recognize that Defendant raised factual and legal defenses that present a real risk that Plaintiff may not prevail. Plaintiff and Class Counsel also recognize the expense and delay associated with continued prosecution of the Litigation against Defendant through decertification, summary judgment, trial, and any subsequent appeals.

Plaintiff and Class Counsel have also accounted for the uncertain outcome and risks of litigation, especially in complex collective and class actions such as this, as well as the difficulties inherent in such litigation. Therefore, Plaintiff believes it is desirable that this Litigation be fully and finally compromised, settled, and resolved with prejudice. Based on its evaluation, Class Counsel has concluded that the terms and conditions of this Settlement Agreement are fair, reasonable, and adequate to the Class/Collective Members, and that it is in their best interests to settle the claims raised in the Litigation as set forth in the Settlement Agreement.

## III.    THE SETTLEMENT AGREEMENT AND TERMS

After months of contentious litigation and two mediations with the court-appointed mediator, the Parties have reached a settlement which, if this Court finally approves, will resolve all wage and hour claims Plaintiff and the putative settlement class have asserted against Defendant.

The Parties propose to finally certify the following Settlement Class:

All persons employed by Defendant as FCOI Investigators (as defined in the Settlement Agreement) at any time during the period from February 5, 2017, or three years back from the date of opt-in if earlier, through the date of this Court's Preliminary Approval Order and who either do not have arbitration agreements or who Opted-in to this litigation prior to April 8, 2020.

No class member sought exclusion from the class.

### A.  Monetary Settlement Relief

The Settlement cornerstone is the substantial, concrete monetary relief it provides to Class/Collective Members. The Settlement provides for payments to be made to approximately 92 Members who are a part of both the FLSA collective action and/or Rule 23 state law class. The Settlement Agreement allows the Class/Collective Members to look to a common Settlement Fund of $495,000 created by Defendant for settlement and satisfaction of their claims. The Settlement is a "claims made" settlement such that the Class/Collective Members must return a timely, valid Claim Form to waive their FLSA claims and receive a settlement payment.  Any unclaimed

settlement payments revert to Defendant because any Class Member who does not return a claim will retain his/her FLSA rights so any such Class Member may later file an individual FLSA action. Class/Collective Members (who do not opt out) will receive a pro rata gross average settlement payment amount of about $5,500. If this Court approves the requested amounts for attorneys' fees, a service award, and administrative costs, Plaintiff anticipates that, on average, each Class Member will receive a net settlement payment of approximately $3,389.

The Settlement Fund will be used to pay all administrative expenses, attorney fees and expenses, payroll taxes, and an enhancement award. The Settlement Fund will then be distributed to the Class/Collective Members based upon the number of Applicable Workweeks they worked as a FCOI Investigator. The Settlement pays Class/Collective Members about five (5) hours of overtime for each Applicable Workweek they worked.

### B. Class Notice Effectuated

In its Preliminary Approval Order, this Court appointed Settlement Services, Inc. ("SSI"), to act as the Claims Administrator for the Parties' Settlement. SSI processed the class list to obtain updated Class/Collective Member addresses. On August 25, 2020, SSI then mailed and emailed the approved Notice to the Class/Collective Members. Fifty-five (55) Class/Collective Members returned claim forms. No Class/Collective Member sought exclusion. One Class/Collective Member objected to the Settlement. Ex. 2, Declaration of Robert Hyte.

### C. Class Member Reactions Are Overwhelmingly Positive

The objection and opt-out period closed on October 5, 2020. No Class/Collective Member sought exclusion from the Settlement. One Class/Collective Member, Jeff Riebau, objected to "the entirety of the lawsuit" because it "is a frivolous lawsuit that I am sad to see that Chase is settling on." Ex. 2, Hyte Dec., Ex. A. Riebau, however, did not object to the Settlement allocation

formula, the individual award amounts, or Class Counsel's fees and expenses.  He also did not provide any legal basis for his objection.  Accordingly, the Parties request the Court summarily overrule his objection.

### D.  Other Settlement Terms

Pursuant to the Settlement Agreement, Class Counsel is authorized to petition the Court for up to one-third of the fund as attorneys' fees and costs, and an FLSA enhancement award for Plaintiff. Class Counsel has filed a separate approval motion on these items.

Finally, Defendant notified the appropriate Federal and State officials of the Parties' proposed Settlement as required by the Class Action Fairness Act of 2005 ("CAFA").

## IV.    THE CLASS/COLLECTIVE MEMBER NOTICE PLAN FULLY SATISFIED THE RULE 23 NOTICE REQUIREMENTS.

Rule 23(c)(2)(B) provides that the Parties must send Class/Collective Members the best individual notice that is practicable under the circumstances by U.S. mail, electronic means, or other appropriate means. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950). To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or optout of the action." *Twigg v. Sears, Roebuck & Co*., 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted).

This Court approved the Parties' Notice plan and found that it satisfied the Rule 23(c)(2)(B) criteria. ECF No. 132, pp. 3-4.  On August 25, 2020, SSI, the court-appointed Claims Administrator, issued the approved Notice by U.S. mail and email to the 92 Class/Collective Members.  Ex. 2, Hyte Decl. ¶ 5.  The USPS did not return any mailed Notices as undeliverable.

*Id.* ¶ 6. 54 Class/Collective Action Members returned claim forms. *Id.* ¶ 9. Thus, the Notice plan complied with Rule 23(c)(2)(B) and this Court's Preliminary Approval Order.

### V. THE PARTIES' SETTLEMENT IS FAIR, ADEQUATE, AND WITHIN THE RANGE OF REASONABLENESS, AND THE SETTLEMENT SATISFIES THE RULE 23 FINAL APPROVAL REQUIREMENTS.

"Compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595, 30 S.Ct. 441, 54 L.Ed. 625 (1910). It is "the policy of the law generally to encourage such settlements," *Narvaez v. Law Offices of Antonio Duarte, III, P.A.*, 2015 WL 460 WL 4605756, *3 (M.D. Fla. July 30, 2015) (*quoting Fla. Trailer and Equip. Co. v. Deal*, 284 F.2d 567, 571 (5th Cir.1960)), and accordingly, "class-action settlements will be disapproved only upon considerable circumspection." *Id.* (*quoting Mashburn v. Nat'l Healthcare, Inc.*, 684 F.Supp. 660, 667 (M.D. Ala. 1988)).

In analyzing any settlement, "there is an overriding public interest in favor of settlement [because it] is common knowledge that class action suits have a well-deserved reputation as being most complex." *Strube v. American Equity Inv v. Life Ins. Co.*, 226 F.R.D. 688, 698 (M.D. Fla. 2005) (*quoting Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) (citation omitted); *see also Pierre-Val v. Buccaneers Ltd. P'ship*, 2015 WL 12843848, at *7 (M.D. Fla. Dec. 7, 2015) ("[S]erious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation."). Moreover, "in evaluating a settlement's fairness, "the Court must not forget that compromise is the essence of a settlement." *Strube*, 226 F.R.D. at 699 (internal citations omitted). The trial court "should not make a proponent of a proposed settlement justify each term … against a hypothetical or speculative measure of what concessions might have been gained." *Id.*

## A.    The Settlement Is Fair, Adequate, And Reasonable.

In deciding whether to finally approve the Settlement, this Court considers whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. SouthTrust Bank of Al., N.A.*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). Ultimately, "[a] settlement is fair, reasonable and adequate when 'the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued.'" *In re Checking Acct. Overdraft Litig.*, 830 F.Supp.2d 1330, 1344 (S.D. Fla. 2011) (citation omitted). Generally, "the district court 'should be hesitant to substitute its own judgment for that of counsel.'" *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) (*quoting Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

The Eleventh Circuit has identified six factors this Court should consider in analyzing the fairness, reasonableness, and adequacy of a class action settlement under Rule 23(e):

(1) the existence of fraud or collusion behind the settlement;

(2) the complexity, expense, and likely duration of the litigation;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the probability of the plaintiffs' success on the merits;

(5) the range of possible recovery; and

(6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Leverso*, 18 F.3d at 1530 n.6; *see also Bennett*, 737 F.2d at 986. Additionally, effective December 1, 2018, Rule 23(e) was amended to add a mandatory, but not exhaustive, list of similar final approval factors:

(A)  the class representatives and class counsel have adequately represented the class;

(B)  the proposal was negotiated at arm's length;

13

(C)  relief provided for the class is adequate, taking into
account:
(i)   the costs, risks, and delay of trial and appeal;
(ii)  the effectiveness of any proposed method of
distributing relief to the class, including the method of
processing class-member claims;
(iii)  the terms of any proposed award of attorney's fees,
including timing of payment; and
(iv)  any agreement required to be identified under Rule
23(e)(3); and
(D) the proposal treats class members equitably relative to each
other.

Fed. R. Civ. P. 23(e)(2).

### 1.    No Fraud or Collusion Occurred.

This case was anything but a "file and settle case." *See David v. American Suzuki Motor Corp.*, 2010 WL 1628362, at *6 (S.D. Fla. 2010).  The Parties' Settlement here, which came about only after about one year of intensive litigation and two mediations, did not result from fraud or collusion. *See, e.g., Saccoccio v. JP Morgan Chase Bank, N.A.,* 297 F.R.D. 683, 692 (S.D. Fla. 2014) ("Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion."); *In re Sunbeam Sec. Litig.*, 176 F.Supp. 2d 1323, 1329 n.3 (S.D. Fla. 2001); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (court had "no doubt that this case has been adversarial, featuring a high level of contention between the parties"); *Warren v. City of Tampa*, 693 F.Supp. 1051, 1055 (M.D. Fla. 1988) (record showed no evidence of collusion, and instead showed "that the parties conducted discovery and negotiated the terms of settlement for an extended period of time"), *aff'd*, 893 F.2d 347 (11th Cir. 1989).

Here, Plaintiff and the Class/Collective Action Members were represented by experienced counsel throughout the negotiations. The Parties litigated for over a year, which includes conducting written discovery, and vigorous motion practice including Plaintiff's briefing the motion for nationwide FLSA conditional certification and obtaining conditional certification.

Through discovery, Class Counsel obtained full payroll and employment data of the putative Rule 23 Class/Collective Members from which they could calculate potential damages that could have been recovered if they were successful in their claims.  Class Counsel and Defendant engaged in arm's-length negotiations via two mediations. Class Counsel negotiated the Settlement with the same degree of vigor they brought to the underlying litigation. Ex. 3, Meeks Dec., ¶¶ 12-14; *Cotton v. Hinton*, 559 F. 2d 1326, 1330 (5th Cir. 1977) (a class action settlement should be approved so long as the Court finds that it is "fair, adequate and reasonable and is not the product of collusion between the parties."); *see also Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1318-19 (S.D. Fla. 2005) (approving class settlement where the "benefits conferred on the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel") *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of … a highly experienced mediator, lends further support to the absence of collusion."); *In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d at 1345, 1349 (no collusion where settlement reached by capable and experienced counsel with the assistance of a well-qualified, experienced mediator). Thus, the Settlement satisfies Rules 23(e)(2)(A) and (B).

      **2.**    **The Settlement Will Avert Years of Complex and Expensive Litigation.**

This case involves complex FLSA and state law wage and hour claims and defenses. Recovery by any means other than settlement would be time consuming for all Parties involved. *See United States v. Glens Falls Newspapers, Inc.*, 160 F. 3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial.")   Where success at trial is uncertain,

this factor weights in favor of approving the settlement. *See Newman v. Sun Capital, Inc.*, 2012 WL 3715150, at *11 (M.D. Fla. Aug. 28, 2012).

The Settlement here provides immediate and substantial monetary benefits to the Class/Collective Action Members. Defendant has continually denied any liability so the Class/Collective Members faced extensive additional discovery and litigation into whether they were exempt under the FLSA and state law, and the amount of overtime, if any, they worked each week. Ex. 3, Meeks Decl., ¶ 17. Particularly considering that the "demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement," *Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992) (citation omitted), there can be no doubt that the instant Settlement is adequate.

### 3.    The Factual Record Is Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment.

The Court also considers "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995). However, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler*, 822 F. Supp. at 1555. The Parties here reached the Settlement only after more than one year of litigation, and after the Parties engaged in formal discovery with Defendant and two mediations with Mr. Grilli, the court-appointed mediator. The Parties through experienced counsel conducted a thorough analysis of Plaintiff's and the Class/Collective Action Members' claims. Ex. 3, Meeks Decl., ¶¶ 15-17. As a result, the Parties were well-positioned to confidently evaluate the strengths and weaknesses of the claims and prospects for success at trial and on appeal.

**4.    Plaintiff Would Have Faced Significant Obstacles to Obtaining Relief.**

Another important factor this Court considers is "the likelihood and extent of any recovery from the defendants absent ... settlement." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 314 (N.D. Ga. 1993); *see also Ressler*, 822 F. Supp. at 1555 ("A Court is to consider the likelihood of the plaintiff's success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise."). Here, this case presented significant risks both at the outset and throughout the litigation. While Class Counsel is confident in Plaintiff's case, Class Counsel are also mindful that Defendant had advanced significant defenses, including defenses to FLSA and Rule 23 class certification and liability, that Plaintiff would have been required to overcome in the absence of the Settlement.  Ex. 3, Meeks Decl., ¶ 17.

Setting aside the risk involved, continued litigation would have involved substantial delay and expense. Plaintiff would have been required to certify the class, face the prospect of interlocutory review of any Order granting class certification, prevail on FLSA decertification, summary judgment, a trial on the merits, and a post-judgment appeal. The uncertainties and delays from this process would have been significant. Given the myriad risks attending these claims, as well as the certainty of substantial delay and expense from ongoing litigation, the Settlement is certainly a fair compromise. *See, e.g., Bennett v. Behring Corp.*, 96 F.R.D. 343, 349-50 (S.D. Fla. 1982), *aff'd*, 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" creating "great uncertainty as to the fact and amount of damage," making it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers ... to the vagaries of a trial").

5.     **The Benefits the Settlement Provides Are Fair, Adequate, and Reasonable When Compared to the Range of Possible Recovery.**

In determining whether the Settlement is fair in comparison to the potential range of recovery, this Court is guided by "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens*, 118 F.R.D. at 542. The Parties' Settlement must be evaluated "in light of the attendant risks with litigation." *Thompson v. Metropolitan Life Ins. Co.*, 216 F.R.D. 55, 64 (S.D.N.Y. 2003); *see Bennett*, 737 F.2d at 986 ("[C]ompromise is the essence of settlement."); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("[T]he very essence of a settlement is ... a yielding of absolutes and an abandoning of highest hopes.") (internal quotation omitted). Thus, courts regularly find settlements to be fair where "[p]laintiffs have not received the optimal relief." *Warren*, 693 F. Supp. at 1059; *see, e.g., Great Neck Capital Appreciation Investment P'ship, L.P. v. PriceWaterHouseCoopers, LLP*, 212 F.R.D. 400, 409-410 (E.D. Wis. 2002) ("The mere possibility that the class might receive more if the case were fully litigated is not a good reason for disapproving the settlement."). "The range of possible recovery spans from a finding of non-liability to a varying range of monetary and injunctive relief. In considering the question of a possible recovery, the focus is on the possible recovery at trial." *Saccoccio*, 297 F.R.D. at 693 (internal quotations and citations omitted).

Here, the relief the Settlement offers is more than fair and adequate. Plaintiff could receive nothing if Defendant's exemption defenses prevail, including the administrative exemption. Plaintiff estimates that the $495,000 settlement approximates payment for five (5) hours of overtime for Class/Collective Members if they had been successful in their claims spanning the entire class period. Plaintiff estimates that the settlement payments average approximately $5,500 (gross), $3,389 (net) per Class/Collective Member, which is real money. Plaintiff and Class

Counsel estimate that the settlement payments constitute about 50% of the maximum recovery (10 overtime hours on average per week) worked by Class/Collective Members.  This is a good result which offers them immediate relief.  Ex. 3, Meeks Decl., ¶¶ 15-20.

The Settlement also treats the Class/Collective Action Members equally.  The Parties agreed that a uniform formula for calculating individual settlement shares that provides each Class/Collective Member with a set amount for each week that they worked as an FCOI Investigator during the Applicable Time Period is the most fair and reasonable formula to distribute funds to the Class/Collective Members.  Middle District Courts including this Court have found such pro rata settlement formulas fair.  *See, e.g., Metzler v. Medical Management International, Inc.,* 2020 WL 5994537, *3 (M.D. Fla. Oct. 9, 2020) (this Court found pro rata settlement formula fair and cited other District cases which held the same).

Although Plaintiff was confident in the merits of her claims, Defendant had asserted a number of affirmative and other defenses, including that the Class/Collective Members were properly classified under the administrative exemption, and had employee affidavits and other data which casts doubt on whether individuals were misclassified and the number of overtime hours the Class/Collective Members actually worked. In addition, Plaintiff faced the risk that the conditionally certified class could be decertified.  As a result, the total settlement award represents a fair settlement of the Class/Collective Members' claims, particularly considering the hurdles that remained for the workers to obtain and maintain class certification and succeed on their claims.  In light of these uncertainties, as well as likely significant delays in obtaining any compensation even if they were ultimately successful at trial, Plaintiff and Class Counsel believe that the proposed Settlement is a good result for the Class/Collective Members, and satisfies Rules 23(e)(2)(C) and (D).  Ex. 3, Meeks Decl.,  ¶¶ 15-20; *see, e.g., Dukes,* 2019 WL 8358700, *2 ("the fact that a

proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate.") (*quoting Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."), *aff'd*, 899 F.2d 21 (11th Cir. 1990)).

### 6.    The Opinions of Class Counsel, Class Representative, and Absent Settlement Class Members Strongly Favor Settlement Approval.

"The reaction of the class [to the settlement] is an important factor." *Saccoccio v. JPMorgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014) (internal quotations and citations omitted). Here, there was only one legally deficient objection to the Settlement, and no one opted out. This lack of opposition weighs strongly in favor of the Court's approval of the Agreement. *Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) (finding that a low percentage of objections "points to the reasonableness of a proposed settlement and supports its approval").

Moreover, the Court gives "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren*, 693 F. Supp. at 1060; *In re Domestic Air Transp.*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.' ") (citations omitted). The Parties believe that this Settlement is deserving of Final Approval and this Court should agree. *See* Ex. 3, Meeks Dec. ¶¶ 19-20.

### B.    The Proposed Settlement Satisfies The Rule 23 Prerequisites.

This Court previously found the Parties' Settlement satisfied the Rule 23(a) and 23(b)(3) requirements in this Litigation in granting Preliminary Approval to the Settlement. ECF No. 132, p. 3. The factual and legal basis for this Court's finding remains unchanged. The Parties

fully briefed the Rule 23(a) and (b)(3) factors in their Preliminary Approval brief.  ECF No. 131, pp. 13-17.  The Parties will not brief those factors again here because nothing has changed.  Thus, this Court should reiterate its findings that: (a) the Class/Collective Action Members are so numerous that joinder of them is impracticable; (b) there are questions of law and fact common to the Class/Collective Action Members that predominate over any individual questions; (c) the claims of the representative Plaintiff are typical of the claims of the Class/Collective Action Members; (d) the representative Plaintiff and Class Counsel fairly and adequately represent and protect the interests of the Class/Collective Action Members; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the present controversy.

No individuals timely elected to opt out of the Settlement.  Thus, the Class/Collective Action Members are bound by the Settlement and the associated release.

### C.    This Court Should Overrule The Single Unsupported Objection.

One Class/Collective Member, Jeff Riebau, objected to the Settlement by email at 8:26 pm on October 5, 2020, the last day of the 40 day objection period.  *See* Ex. 2, Hyte Dec., Ex. A. Riebau objects "to the entirety of the lawsuit" because it "is a frivolous lawsuit that I am sad to see that Chase is settling on."  Riebau fails to provide any factual or legal basis for his objection or this Court denying final approval.  He also does not object to any specific settlement provision including the individual settlement formula or awards, or the amount of attorney's fees or expenses.  Thus, Riebau's objection should be overruled.  *See, e.g., Rodriguez v. Mears Destination Services, Inc.,* 2018 WL 8061811, *3 (M.D. Fla. Sept. 4, 2018) ("the concerns expressed in the two Objections do not provide a meritorious reason to deny final approval in this case").

Based upon the above, this Court should grant final approval to the Parties' Settlement.

## VI.    THE PARTIES' SETTLEMENT LIKEWISE MEETS THE STANDARD FOR FLSA SETTLEMENT APPROVAL.

The Class/Collective Members who joined the Settlement by returning a Claim Form also waived their FLSA claims.  As such, this Court must also approve the settlement under the FLSA. *See Lucas v. Total Control Termite and Pest Professionals, Inc.,* 2018 WL 8576315 (M.D. Fla. Dec. 6, 2018) (FLSA settlements are subject to judicial scrutiny).

This Court previously conditionally certified this case as a FLSA collective action.  See ECF No. 104.  Nothing about this case has changed since this Court granted conditional certification. As extensively described above, Plaintiff estimates that the Settlement here provides for an average settlement payment of about $5,500 (gross), $3,389 (net) per FLSA Collective Member in exchange for waiving his/her FLSA claims.  Further, each FLSA Collective Member had the choice as to whether to compromise his/her FLSA claim by returning a claim form.  Finally, the Settlement requires Class Counsel receive a reasonable attorney's fee for prosecuting the FLSA claims.  Thus, this Court should approve the FLSA Settlement.  *Stephens v. One Touch Direct, LLC,* 2020 WL 4904645, *1 (M.D. Fla. Aug. 20, 2020) (approved FLSA settlement "fair on its face" and which was a "reasonable compromise"); *see also Bonetti v. Embarq Management Company,* 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009) (same).

## VII.    <u>CONCLUSION</u>

For the reasons set forth above, the Parties respectfully request that this Court enter the proposed order (1) certifying the Rule 23 class for settlement purposes only; (2) granting final approval of the Parties' proposed Settlement under Rule 23(e), and (3) dismissing the case with prejudice.

Respectfully submitted this 6th day of November, 2020.

/s/ Gregg I. Shavitz
Gregg I. Shavitz
**Shavitz Law Group, P.A.**
951 Yamato Road, Suite 285
Boca Raton, Florida 33431
Tel:  (561) 447-8888
Fax: (561) 447-8831
E-mail: gshavitz@shavitzlaw.com


/s/ Rowdy B. Meeks
Rowdy B. Meeks*, Kansas Bar No.16068
**Rowdy Meeks Legal Group LLC**
8201 Mission Road, Suite 250
Prairie Village, Kansas 66208
Tel:  (913) 766-5585
Fax:  (816) 875-5069
Rowdy.Meeks@rmlegalgroup.com
www.rmlegalgroup.com

*pro hac vice motion granted

Counsel for Plaintiff and Class/Collective
Members



s/  Mark E. Zelek
Mark E. Zelek (Florida Bar No. 667773)
MORGAN, LEWIS & BOCKIUS LLP
200 South Biscayne Boulevard, Suite 5300
Miami, FL  33131-2339
Tel:  +1-305-415-3303
eFax:  +1-877-432-9652
eMail:  mark.zelek@morganlewis.com


Sari M. Alamuddin (*admitted pro hac vice*)
MORGAN, LEWIS & BOCKIUS, LLP
77 W. Wacker Drive
Chicago, IL  60601
Tel:  +1-312-324-1000
Fax:  +1-312-324-1001
eMail:  sari.alamuddin@morganlewis.com


Sam S. Shaulson (*admitted pro hac vice*)
MORGAN, LEWIS & BOCKIUS, LLP

101 Park Avenue
New York, NY 10178
Tel: +1.212.309.6718
Fax: +1.212.309.6001
eMail: sam.shaulson@morganlewis.com

Stephanie R. Reiss *(admitted pro hac vice)*
MORGAN, LEWIS & BOCKIUS, LLP
One Oxford Ctr., 32nd Fl.
Pittsburgh, PA 15219-6401
Tel: +1.412-560-3300
Fax: +1.412-560-7001 (Fax)
eMail: stephanie.reiss@morganlewis.com
Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of November 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Rowdy B. Meeks
Attorney for Plaintiff